CC-96-2                                - 1 -

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| ASOCIACION DE RESIDENTES DE PARK SIDE, INC.<br><br>     Apelante<br><br>     V.<br><br>JUNTA DE PLANIFICACION DE PUERTO RICO<br><br>     Apelada | Apelación<br><br>98TSPR168 |

Número del Caso: AA-96-15

Abogados de la Parte Apelante: Lic. Mario J. Pabón

Abogados de la Parte Apelada: Ledesma, Palou & Miranda

Abogados de la Parte Interventora:

Agencia Administrativa: Junta de Planificación

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 12/15/1998

Materia:

     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correciones del
     proceso de compilación y publicación oficial de las
     decisiones del Tribunal. Su distribución electrónica se hace
     como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Residentes
de Park Side, Inc.

       Apelante


        v.                                      AA-96-15

Junta de Planificación
de Puerto Rico

       Apelado


**Opinión del Tribunal emitida por el Juez
Asociado señor Hernández Denton**


San Juan, Puerto Rico a 15 de diciembre de 1998.


     Nos corresponde determinar si la Junta de Planificación de Puerto Rico [en adelante Junta de Planificación], actuó conforme a derecho al autorizar la rezonificación de un solar ubicado en la Urbanización Park Side de Guaynabo de la categoría Distrito Residencial General (R-3), a la categoría Distrito Comercial de Oficinas Uno, (CO-1). Dicha autorización fue realizada con la oposición de la Asociación de Residentes de la referida urbanización la cual plantea ante nos que la Junta de Planificación actuó de forma arbitraria y claramente caprichosa al incumplir con varias disposiciones reglamentarias aplicables.

Estimamos que la Asociación de Residentes tiene razón. Por ello, revocamos la rezonificación impugnada ante nos.

I.

La Urbanización Park Side es una zona residencial localizada en el municipio de Guaynabo que está compuesta por aproximadamente sesenta y cinco (65) unidades de vivienda. En marzo de 1995, el señor Manuel Fernández Martínez, gestionó ante la Junta de Planificación un cambio de zonificación de un solar de su propiedad localizado en la Calle A-2, número 19, de dicha urbanización. Su intención era cambiar la zonificación del referido solar de la categoría Distrito Residencial General (R-3) a una categoría Distrito Comercial Local, (C-1) o a una categoría Distrito Comercial de Oficina Uno (CO-1).

Según el Reglamento de Zonificación de Puerto Rico Número 4 de la Junta de Planificación, [en adelante Reglamento de Zonificación], el Distrito R-3 fue establecido para clasificar "áreas residenciales desarrolladas o que puedan desarrollarse y en donde se permitirán diferentes tipos de viviendas en solares de trescientos (300) metros cuadrados o más". Sección 13.01 del Reglamento de Zonificación. Por su parte, el Distrito C-1 fue establecido en el Reglamento de Zonificación "para clasificar áreas comerciales o para crear nuevas áreas comerciales que suplan las necesidades diarias de las personas que residen en el vecindario". Sección 21.00 del Reglamento de Zonificación. Mientras, el Distrito Comercial de Oficina Uno fue establecido para clasificar áreas "donde existan o puedan existir oficinas, excepto las de alto volumen de clientela principalmente como transición entre otros distritos comerciales y áreas residenciales". Sección 18.01 del Reglamento de Zonificación.

Hasta el momento de la solicitud de rezonificación, el señor Fernández Martínez operaba en su propiedad una oficina comercial dedicada a la promoción de diversos productos. Esto era así a pesar de que esta era una actividad no autorizada por el ordenamiento de zonificación vigente y de que la Administración de Reglamentos y Permisos [A.R.P.E.], había emitido el 25 de marzo de 1994 una

Resolución mediante la cual ordenó a Fernández Martínez a que cesara la operación de la referida oficina en un período de veinte (20) días. Surge del expediente que Fernández Martínez incumplió esta orden.

Como parte del proceso de rezonificación, el 23 de marzo de 1995, el señor Fernández Martínez, a través del Ingeniero Daniel Gómez, le envió una comunicación escrita a algunos de los vecinos para informarles las gestiones que realizaba ante la Junta de Planificación y que eventualmente se les notificaría la fecha exacta en la que se realizarían las vistas públicas al respecto.

La vista pública fue realizada el 31 de mayo de 1995. A ella comparecieron varios vecinos de la urbanización organizados como la Asociación de Residentes de Park Side, Inc. [en adelante la Asociación de Residentes], para manifestar su oposición al cambio de zonificación solicitado. En esencia, la Asociación de Residentes alegó que la solicitud de rezonificación no cumplía con varias disposiciones del Reglamento de Zonificación ya que no contenía una descripción clara y completa del sector en el cual se proponía hacer la rezonificación, no señalaba cuáles eran las características sobresalientes del sector y no expresaba cuál sería el beneficio que derivaría la comunidad de la rezonificación, según lo requiere la reglamentación aplicable. Además, planteó que la solicitud debía ser rechazada porque el solar en cuestión no contaba con el número de estacionamientos requeridos por el Reglamento de Zonificación.

Finalmente, la Asociación de Residentes destacó otros elementos que, a su juicio, ameritaban la denegatoria de la solicitud de rezonificación: (1) que la calle número 2 de la urbanización no es un área comercial en donde existan oficinas; (2) que la comunidad no recibirá beneficio alguno del cambio solicitado, ya que el establecimiento de oficinas atraerá personas extrañas a la urbanización durante todas las horas del día; (3) que la concesión de la autorización solicitada promueve el "spot zoning", situación que es contraria a la propia política pública de la Junta de Planificación; y

(4) que la aprobación de la rezonificación constituiría el comienzo de la destrucción de la urbanización Park Side como área residencial. Escrito de Apelación, a la pág. 6.

Luego de la celebración de vistas públicas, el 20 de septiembre de 1995 la Junta de Planificación emitió una Resolución mediante la cual aprobó la rezonificación solicitada. Inconforme con esta determinación, la Asociación de Residentes acudió ante nos mediante recurso de apelación,[1] planteando como fundamentos para revocar la referida resolución los siguientes errores: (1) la Junta de Planificación actuó de manera arbitraria, caprichosa e irrazonable y de forma contraria a sus reglamentos al aprobar los cambios solicitados; y (2) la reorganización solicitada viola varias disposiciones del Plan de Usos de Terrenos de la región metropolitana de San Juan, particularmente en cuanto a que la misma constituye una zonificación aislada, o "spot zoning".[2]

El apelado Fernández Martínez, por su parte, acudió ante nos para expresarnos su posición. Así pues, con el beneficio de la comparecencia de las partes, y luego de evaluar el derecho aplicable, resolvemos.

## II.

La Junta de Planificación es una entidad creada por ley cuyo objetivo principal es guiar el desarrollo integral y balanceado de Puerto Rico. Para viabilizar esa importante función, la Asamblea Legislativa le confirió amplios poderes para clasificar y designar los terrenos en zonas y distritos y para establecer las normas que guiarán

---

[1] El presente recurso fue instado bajo la vigencia de la disposición de la Ley de la Judicatura de 1994 que establecía que las decisiones administrativas que antes eran revisadas por el extinto Tribunal Superior de San Juan, serían consideradas en apelación directamente por este Foro. Plan de Reorganización de la Rama Judicial, Núm. 1, 28 de julio de 1994; véase, Farmacias Moscoso, Inc. v. K-Mart Corp., Opinión y Sentencia de 5 de octubre de 1995; ___ D.P.R. ___ (1995).

[2] La Asociación de Residentes había presentado ante nos un recurso de apelación, previo al recurso que hoy nos ocupa. Véase, Asociación de Residentes Park Side, Inc. v. Junta de Planificación de Puerto Rico, AA-95-112. En aquella ocasión desestimamos el recurso por haber sido presentado prematuramente. Asociación de Residentes de Park Side, Inc. v. Junta de Planificación de Puerto Rico, Resolución de 6 de febrero de 1996.

su uso y desarrollo. Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. secs. 62 et seq.; Arenas Procesadas, Inc. v. E.L.A., Opinión y Sentencia de 2 de febrero de 1993, 132 D.P.R. ___ (1993). Los reglamentos y mapas de zonificación aprobados con ese fin pretenden promover el uso más eficaz del limitado recurso tierra, de forma que se promueva el desarrollo urbano de una manera ordenada y lógica, con el menor impacto adverso posible sobre el ecosistema.[3]

De conformidad con los poderes delegados, la Junta de Planificación elaboró el Reglamento de Zonificación. Aunque este reglamento fue aprobado originalmente en 1955, los cambios continuos en nuestra sociedad han requerido de múltiples revisiones para atemperarlo a las nuevas realidades y necesidades de nuestro entorno urbano y social.

El Reglamento de Zonificación vigente crea varios tipos de distritos de zonificación, tales como residenciales, comerciales, industriales, agrícolas y para uso público, entre otros. Provee una descripción de los propósitos de cada una de estos tipos de distritos y sus diversas variantes y define sus posibles usos. A través de este proceso, la Junta de Planificación establece normas específicas sobre el uso de los terrenos y sobre las obras o estructuras que pueden ser construidas en ellos, de forma que se viabilice un desarrollo balanceado que, a su vez, garantice la salud y seguridad pública y la mejor convivencia humana.

Los mapas de zonificación elaborados por la Junta de Planificación complementan el ordenamiento de zonificación en Puerto Rico. El propio

---

[3] El Reglamento de Zonificación define un ecosistema como:

la unidad funcional básica que constituyen organismos vivos (comunidad biótica) y su ambiente no viviente (abiótico), cada uno de los cuales influye sobre la propiedad del otro, mediante el intercambio cíclico de materia y energía entre sus componentes, siendo ambos necesarios para la conservación de la vida tal como la tenemos en la tierra.

Reglamento de Zonificación, a la pág. 11.

Reglamento de Zonificación dispone que "[l]os mapas de zonificación que la Junta aprueb[a] y adopt[a] forma[n] parte integral de y [rigen] conjuntamente con [el] Reglamento". Sección 4.12 del Reglamento de Zonificación. Estos mapas delimitan geográficamente los distritos que se describen en el Reglamento de Zonificación.

Una vez establecida una zonificación en los mapas de zonificación, la misma sólo podrá ser variada de conformidad con la Sección 4 del Reglamento de Zonificación. Esta sección dispone que la Junta de Planificación "podrá considerar cambios a la zonificación de determinado sector o solar por petición de alguna persona, funcionario u organismo". Sección 4.04 del Reglamento de Zonificación. Asimismo, la sección 4.06 del Reglamento de Zonificación establece los requisitos procesales que deben cumplirse para efectuar la referida rezonificación.

La autoridad para zonificar y rezonificar conferida a la Junta de Planificación forma parte del poder de reglamentación que le fue delegado por la Asamblea Legislativa. Las actuaciones realizadas al amparo de esta autoridad constituyen actos de naturaleza cuasi legislativa, 23 L.P.R.A. sec. 63(d), ya que "no que no adjudica[n] una controversia, sino que establece[n] una reglamentación". Luan Investment Corp. v. Román, 125 D.P.R. 533, 545 (1990).

Al respecto, en Luan Investment Corp. v. Román, id., señalamos:

> [l]os mapas de zonificación y sus enmiendas representan la forma visual y práctica de instrumentar los reglamentos de zonificación y sus enmiendas. Su aprobación y enmiendas no son actos de naturaleza adjudicativa, dirigidos a resolver una controversia en particular entre una o más personas, sino que son actos producto de los instrumentos con los cuales el Estado ha provisto a la Junta para reglamentar el uso de la tierra en Puerto Rico, de manera que se logre un desarrollo integral y balanceado de nuestra sociedad. Id., a la pág. 547.

La Ley Orgánica de la Junta de Planificación contempla la revisión judicial para este tipo de actuaciones cuasi legislativas. 23 L.P.R.A.

sec. 63(d).[4] En este contexto, aunque la Junta de Planificación posee un amplio margen de discreción para implantar la política pública estatal sobre zonificación, y, como entidad administrativa, sus actuaciones poseen una presunción de validez y regularidad, Marketing & Brokerage Specialties, Inc. v. Departamento de Agricultura, 118 D.P.R. 319 (1987), compete a los tribunales examinar, en última instancia, la validez jurídica de sus actuaciones.

Para que el ejercicio del poder de reglamentar el uso de los terrenos por parte de la Junta de Planificación sea válidamente ejercido y no entre en conflicto con la disposición constitucional que reconoce como un derecho fundamental el derecho al disfrute de la propiedad, Const. de P.R., Art. II, Sec. 7, su ejercicio debe estar razonablemente relacionado a un interés gubernamental legítimo, como lo es la protección de la seguridad pública, la salud, la moralidad o el bienestar general. Además, debe estar enmarcado en el ámbito de los poderes delegados por la Legislatura y debe ser consecuente con las disposiciones de los reglamentos que rigen en materia de zonificación y planificación en nuestro país.

Por ello, como medida fiscalizadora, hemos sostenido que para evaluar si la Junta de Planificación se ha extralimitado en el ejercicio de sus poderes, los tribunales deberán evaluar los siguientes factores: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse la reglamentación se cumplió con las normas procesales; y (5) si la reglamentación es arbitraria o caprichosa. Luan Investment Corp. v. Román, supra, a la pág. 550.

---

[4] La Ley Orgánica de la Junta de Planificación dispone, en parte, que "[l]as actuaciones, decisiones o resoluciones de la Junta de Planificación en el ejercicio de sus funciones cuasi legislativas, tales como la adopción y promulgación de reglamentos y mapas de zonificación o las enmiendas a los mismos, serán finales [...]". Asimismo, expresa que la revisión judicial se limitará exclusivamente a cuestiones de derecho. 23 L.P.R.A. sec. 63(d).

Compete a la parte que impugna una determinación de la Junta de Planificación demostrar su invalidez. Por lo tanto, en el presente caso compete a la Asociación de Residentes demostrar que la actuación de la Junta de Planificación fue arbitraria y caprichosa, por apartarse de las normas antes expuestas.

En el caso de autos la Asociación de Residentes argumenta que la Junta de Planificación incumplió con la sección 4.06 del Reglamento de Zonificación, la cual requiere que la parte promovente de una rezonificación someta a la Junta un memorial explicativo que contenga información esencial respecto a la naturaleza del sector objeto de la solicitud de rezonificación. Además, argumenta que el local rezonificado no posee el número de estacionamientos requeridos para el tipo de actividad que se contempla realizar en él. Por otro lado, en el segundo señalamiento de error nos plantean que la rezonificación aprobada constituye una rezonificación aislada ("spot zoning") lo que es contrario al Plan de Usos de Terrenos del área metropolitana de San Juan.

Notamos que aunque las controversias que plantea el primer señalamiento de error inciden sobre el cumplimiento de disposiciones reglamentarias, éstas disposiciones se enmarcan en la política pública de evitar la rezonificación de zonas de forma desordenada y sin que posean las condiciones necesarias para satisfacer las necesidades del nuevo tipo de zonificación. Estimamos, por lo tanto, que para un mejor análisis de las controversias que plantea el caso de autos, debemos analizar inicialmente el segundo señalamiento de error, el cual se circunscribe a determinar si la rezonificación impugnada viola el ordenamiento vigente.

III.

La Asociación de Residentes nos plantea que la rezonificación aprobada por la Junta de Planificación viola varias disposiciones del Plan de Usos de Terrenos para la Región Metropolitana de San Juan promulgado el 31 de marzo de 1982. En específico, destacan que tal

autorización viola las disposiciones 4.01 y 6.03 del referido Plan, que requieren que se examinen la compatibilidad de los usos de los terrenos al momento de hacer cambios en las zonificaciones a base de que no se cree un impacto adverso a los usos existentes, y destacan la necesidad de evitar la introducción de nuevos distritos de zonificación aislados ("spot zoning") en áreas donde predomina otro uso.

### A.

La Ley Orgánica de la Junta de Planificación define el objetivo de los Planes de Usos de Terrenos. Señala que éstos designan:

> la distribución, localización, extensión e intensidad de los usos de los terrenos para propósitos urbanos, rurales, agrícolas, de explotación minera, bosques, conservación y protección de los recursos naturales, recreación, transportación y comunicaciones, generación de energía, y para actividades residenciales, comerciales, industriales, educativas, públicas e institucionales. 23 L.P.R.A. sec. 62(m).

La misma ley, además, de forma enfática destaca que "[l]os Planes de Usos de Terrenos, así como la disponibilidad y programación de la infraestructura física y social, serán la base para la preparación y revisión de los mapas de zonificación". 23 L.P.R.A. sec. 62(m). Más adelante destaca que toda obra o proyecto que sea realizado por cualquier persona o entidad "deberá estar de acuerdo con las recomendaciones de los Planes de Usos de Terrenos". Id. Es evidente, pues, la importancia de los Planes de Usos de Terrenos en el ordenamiento de zonificación en Puerto Rico. Sus preceptos forman parte de la política pública gubernamental en torno a la planificación.

De conformidad con lo anterior, la Junta de Planificación adoptó, y el entonces Gobernador de Puerto Rico aprobó el 31 de marzo de 1982, el Plan de Usos de Terrenos vigente. Este Plan delimita el área que abarca y reconoce su carácter flexible y dinámico de forma tal facilite la toma de decisiones en torno a la planificación del país, sin impedir el desarrollo ordenado. Véase, Plan de Usos de Terrenos del Area Metropolitana de San Juan, a la pág. 4.

El Plan de Usos de Terrenos indentifica seis (6) categorías de problemas que afectan la región y los clasifica por aquellos que son generales a toda el área y aquellos que afectan zonas específicas. Al hacerlo, establece metas, objetivos y estrategias que viabilicen la solución de los problemas planteados.[5]

En el presente caso, las disposiciones que argumenta la Asociación de Residentes que fueron violadas están ubicadas en la sección que discute el problema de la especialización de los usos de terrenos. Plan de Usos de Terrenos, a la pág. 72. Esta sección establece como meta "[p]ropiciar la diversificación de actividades y usos compatibles y complementarios en aquellas áreas que reúnan los requisitos y promover mayor vitalidad a sitios estratégicos en espacio y tiempo". Id. Más adelante identifica como objetivo: "evitar [la] mezcla de usos incompatibles", e identifica como estrategia lo siguiente:

4.01 Juzgar la compatibilidad de los usos a base de los siguientes criterios[:]

Que las características específicas (magnitud y tipo) del nuevo uso no creen impacto adverso en los usos existentes.

**Que el nuevo uso mantenga un balance en los usos en el área**. Id. (énfasis suplido) (subrayado en el original).

Más adelante, el Plan de Usos de Terrenos destaca como otro de los objetivos "[r]estringir la diversificación de usos en áreas cuyo carácter se desea mantener" y define como estrategias lo siguiente:

6.01 Revisar y aplicar el Reglamento de Zonificación

6.02 Desalentar la continuación de los permisos de usos provisionales que han sido denegados como peticiones de rezonificación

6.03 **Evitar la introducción de nuevos distritos de zonificación aislados (spot zoning) en áreas donde predomina solamente otro uso**. Id. (énfasis suplido) (subrayado en el original) (nota al calce omitida).

---

[5] Las seis (6) categorías de problemas identificados en el Plan de Usos de Terrenos son: (1) escasez de terrenos desarrollables, (2) densificación uniforme, (3) especialización de los usos, (4) insuficiencia de la infraestructura, (5) amenazas a los sistemas naturales, y (6) patrones de desarrollo que estimulan un consumo ineficiente de energía.

Al evaluar la solicitud de rezonificación presentada por Fernández Martínez, y de conformidad con el claro mandato de la Ley Orgánica de la Junta de Planificación, la Junta de Planificación debía considerar la solicitud de rezonificación, no sólo a la luz de las disposiciones del Reglamento de Zonificación, sino además, tomando en consideración las disposiciones antes citadas. La Asociación de Residentes nos plantea, en específico, que la Junta omitió considerar los criterios identificados en la sección 4.01 y que su actuación propicia la creación de nuevos distritos de zonificación aislados o "spot zoning", práctica que desalienta el Plan de Usos de Terrenos. Examinemos sus planteamientos.

### B.

El término zonificación aislada o "spot zoning" ha sido definido por los tribunales y los comentaristas como una enmienda a una zonificación que no es cónsona con los principios o esquemas generales de planificación. John B. Kirkpatrick y otros, Spot Zoning and the Domino Effect, 17 Westchester B.J. 133 (1990); 2 E. C. Yokley, Zoning Law and Practice, 204, Sec. 13-2 (1978). De ordinario, estas enmiendas son el resultado de esfuerzos encaminados a favorecer intereses particulares sin brindarle la debida atención a los derechos de los propietarios de solares adyacentes y al bienestar general de la comunidad. 2 E. C. Yokley, supra, a la pág. 207. Por ello, se ha descrito a este tipo de zonificación como la antítesis de la zonificación ordenada, Palasides Properties, Inc. v. Brunnetti, 207 A.2d 522, 533 (1965); Rodgers v. Tarrytown, 96 N.E.2d 731 (1951); véase, Osborne M. Reynolds Jr., supra, a la pág. 118, y múltiples tribunales la han catalogado como una actuación inválida.[6] Eden v. Town

---

[6] Existen variantes de la práctica denominada como rezonificación aislada. Al respecto, se mencionan las siguientes: la rezonificación aislada a la inversa ("reverse spot zoning") la cual designa aquella situación en la que se le da a un solar una clasificación más restrictiva; y la zonificación parcial ("partial zoning" o "piecemeal zoning"), la cual se refiere a zonificaciones parciales realizadas sobre áreas que carecen de una zonificación o algún plan de

Plan & Zoning Comm'n, 89 A.2d 746 (1952); Cleaver v. Board of Adjustment, 200 A.2d. 408 (1964); French v. Zoning Bd. Of Adjustment, 184 A.2d 791 (1962); City of Rusk v. Cox, 665 S.W.2d 233, 235 (1984). Estimamos que en Puerto Rico se impone similar conclusión.

La rezonificación aislada, por definición, no guarda relación alguna con la salud, seguridad o bienestar general de la ciudadanía. Se trata de una actuación contraria a los mejores intereses de la comunidad que se aparta de los planes de desarrollo de un área geográfica. De hecho, una de las razones por las cuales la rezonificación aislada ha sido catalogada como la antítesis de la planificación ordenada, lo es la posibilidad de que un solar o propiedad sea rezonificada de forma forzada por el hecho de que una propiedad adyacente haya sido rezonificada previamente. Esta situación, que ha sido denominada como el "efecto dómino",[7] véase, John B. Kirkpatrick y otros, supra, a la pág. 138, viene a dramatizar los peligros que acarrea la rezonificación aislada dentro de los planes de planificación ordenada de los usos de terrenos y resalta las razones por las cuales esta práctica debe ser evitada. Si las razones que motivan una rezonificación son ajenas al mejor aprovechamiento de los terrenos, desde una perspectiva macrocósmica e integral, o a un legítimo interés gubernamental --como lo serían la seguridad pública, la salud, o el bienestar general--, el caos y el desorden sustituyen a la planificación ordenada, frustrando así la política pública estatal en torno al uso de los terrenos. De ahí que los tribunales de múltiples jurisdicciones no hayan vacilado en decretar su ilegalidad.

Bajo el ordenamiento de zonificación de Puerto Rico, ocurre una rezonificación aislada o "spot zoning" cuando un mapa de zonificación es enmendado mediante la rezonificación de uno o varios solares o lotes

---

zonificación. Véase, Osborne M. Reynolds Jr., "Spot Zoning" --A Spot That Could be Removed from the Law, 48 Wash. U. J. Urb. & Contemp. L. 117, 118 (1995).

[7] El término recoge la imagen de dóminos colocados en una hilera que caen cuando el primero de la fila es empujado.

autorizando en ellos un uso diferente al establecido originalmente que resulta incongruente o carente de armonía con los usos de los terrenos de las áreas adyacentes. Esta incongruencia, de ordinario, benificia a un grupo reducido de propietarios en perjuicio de los mejores intereses de la comunidad. Esta es la práctica que el Plan de Usos de Terrenos de la región metropolitana de San Juan pretende erradicar al establecer de forma expresa, como una de sus estrategias, que las entidades gubernamentales desalienten esta práctica.

Sin embargo, no toda rezonificación de un solar o propiedad que pudiera apartarse de los usos que han prevalecido en un área constituye una rezonificación aislada, y por tanto una actuación inválida. Para hacer esta determinación es preciso examinar las características precisas del área rezonificada a la luz del ordenamiento que rige en materia de zonificación y examinar si la rezonificación es arbitraria o caprichosa por apartarse significativamente de los usos prevalecientes en el área, afectando adversamente los mejores intereses de la comunidad.

Para hacer esta determinación, en otras jurisdicciones, por ejemplo, se han examinado varios criterios. Entre ellos se ha evaluado si el uso permitido por la rezonificación es muy diferente del uso prevaleciente en el área, esto es, si la rezonificación crea un uso incompatible en un área. Sharp v. Zoning Hearing Bd. Of the Township of Radnor, 628 A.2d 1223 (1993), Radolph v. Brookhaven, 358 N.Y.S.2d 64 (1974); John B. Kirkpatrick y otros, supra, a la pág. 136. También se ha examinado si el cambio autorizado a un tipo de distrito menos restrictivo no fue realizado para el beneficio de la comunidad, sino simplemente, para favorecer a una persona o desarrollador en particular o, en la alternativa, para relevar a un pequeño sector de las restricciones que generalmente aplican a toda el área. 1 Norman Williams, American Planning Law Sec. 27.04, 743 (1988).

Finalmente, se ha examinado si el área involucrada en la rezonificación es particularmente pequeña. Sobre este último criterio se ha destacado, por ejemplo, que "si el área rezonificada involucra sólo un lote o pocos, los tribunales tienden a sospechar y a examinar las justificaciones y los motivos de la rezonificación con mayor cuidado". 1 Norman Williams, supra, a la pág. 740 (traducción nuestra).[8] No obstante, algunas decisiones de tribunales en Estados Unidos, con las que coincidimos, señalan que una rezonificación no constituye una rezonificación aislada por el único hecho de que incida sobre un solar pequeño o porque aplique sólo a una parcela. Rodgers v. Tarrytown, supra, 302 N.Y. a las págs. 122-23. Aunque el área involucrada en la rezonificación debe ser examinado, tal circunstancia no debe ser determinante.

Estimamos que criterios similares a los antes expuestos resultan útiles para determinar cuando una rezonificación constituye una rezonificación aislada. Sin embargo, la evaluación al respecto debe hacerse caso a caso, examinando las particularidades de la zona en cuestión y los Planes de Usos de Terrenos desarrollados para el área para determinar si la rezonificación es contraria a nuestro ordenamiento de zonificación.

Con lo anterior en mente, evaluemos si tal y como afirma la Asociación de Residentes la rezonificación del solar propiedad del señor Fernández Martínez constituye una rezonificación aislada.

C.

---

[8] De hecho, se ha llegado incluso a señalar que la zonificación de solares individuales de pequeña cabida origina una presunción de invalidez sobre la acción gubernamental que corresponde rebatir a quien la defiende. Id; véase además, Chapman v. City of Troy, 4 So. 2d 1 (1941); Davis v. City of Mobile, 16 So.2d 1 (1943); Johnson v. City of Huntsville, 29 So.2d 342 (1947). Algunos tribunales, sin embargo, le han otorgado poca importancia al tamaño del área rezonificada al momento de evaluar la validez de la rezonificación. Kutcher v. Town Planning Commission of Town of Manchester, 88 A.2d 538 (1952); Miss Porter's School v. Town Plan & Zoning Commission of Town of Farmington, 198 A.2d 707 (1964).

Como antes expresamos, el solar rezonificado por la Junta de Planificación comprende un área total de 480 metros cuadrados, ubicados en la Urbanización Park Side de Guaynabo. El área que comprende esta urbanización está zonificada principalmente como distrito R-3.

Notamos que los solares inmediatamente adyacentes al solar en cuestión --esto es, a la derecha y a la izquierda-- tienen una clasificación de distritos R-3. Asimismo, los solares que se encuentran justo en frente del solar también tienen una clasificación R-3. Todos estos solares poseen una cabida similar. Notamos, no obstante, que los solares que colindan por la parte trasera del solar rezonificado tienen una clasificación de distrito C-3 o Comercial Central. Sin embargo, la estructura del área en cuestión, según el mapa de zonificación, revela que el acceso a esa área es independiente del acceso del solar rezonificado y del resto de la Urbanización Park Side. Es decir, para llegar a estas áreas clasificadas como distritos C-3 no es necesario transcurrir por la calle Park Side número 2 en donde está ubicado el solar en controversia y ni siquiera es preciso entrar en la Urbanización Park Side. De este modo, esa área y la urbanización Park Side se encuentran separadas por la particular organización urbana del área. Más aún, con excepción de algunos solares que están próximos a la Avenida San Patricio, que discurre por el extremo oeste de la urbanización, los demás solares con vías de acceso comunes ostentan una clasificación de distrito R-3.

Por otro lado, no hemos hallado argumento alguno que sugiera que la rezonificación del solar del señor Fernández Martínez propenda al bienestar general de la comunidad. Tampoco hemos podido establecer cómo la rezonificación autorizada se atempera al Plan de Usos de Terrenos del área o cómo contribuye a promover un interés gubernamental legítimo.

Por el contrario, toda la evidencia tiende a demostrar que la rezonificación es contraria a la armonía vecinal del área, y que en

lugar de beneficiar a la comunidad, la rezonificación tan sólo beneficia al propietario del solar.

Debe advertirse que uno de los factores que debió examinar la Junta de Planificación al momento de aprobar la rezonificación lo fue si el nuevo uso autorizado en un área predominantemente residencial afectaba de forma desfavorable la convivencia de la personas que residen en el sector. Aprobar una clasificación distinta a la de R-3, sin duda alguna implica promover un tránsito vehicular mayor en una zona concebida en los mapas de zonificación como un área residencial, representa un aumento en el número de vehículos que a diario se estacionan en el área y conlleva un aumento en el ruido que se produce en el área, todo ello en detrimento de la mejor convivencia vecinal.

Por otro lado, la Asociación de Residentes nos dirige la atención al hecho de que la Junta de Planificación había denegado en varias ocasiones solicitudes de rezonificación similares a la solicitada y aprobada en el presente caso.[9] No vemos diferencias notables entre los solares cuya rezonificación fue denegada y el solar que en el presente caso fue aprobada que justifique un resultado distinto. Montoto v. Lorie, Opinión y Sentencia de 11 de marzo de 1998, 145 D.P.R. ___ (1998).

La aprobación de la rezonificación del solar propiedad del señor Fernández Martínez en el presente caso es claramente incongruente con la armonía regional. En consecuencia, nos vemos compelidos a concluir que el cambio de zonificación constituyó una rezonificación aislada, que como señalamos, es contraria a los Planes de Usos de Terrenos y

---

[9] Las solicitudes identificadas son las siguientes: (1) 94-16-0305, JPZ, calle 4, Bloque B-5 (solicitud para establecer oficina de contadores); (2) 94-16-0301 JPZ, calle 4, Bloque C-7 (solicitud para establecer negocio de venta de plantas ornamentales); (3) 91-16-1542, JPZ, calle 4, Bloque C-3, (solicitud para establecer local dedicado a la venta de ropa y salón de belleza); (4) 91-16-0083, JPZ, calle 4, Bloque B-2 (solicitud para establecer una oficina comercial); (5) 90-16-1394, calle 5, Bloque C-22 (solicitud para establecer una oficina comercial).

constituye una actuación arbitraria que los tribunales debemos desalentar y desautorizar.

Esta conclusión no se fundamenta exclusivamente en que no vemos cómo la rezonificación del solar del señor Fernández Martínez se enmarca en un plan de desarrollo integral del área, ni en que no hemos hallado cómo la comunidad en general se beneficia con la rezonificación. Se fundamenta, además, en que la aprobación de la rezonificación puede tener el efecto de forzar la rezonificación de los solares circundantes de forma desordenada.

No negamos que a medida que los centros urbanos se desarrollan, las áreas residenciales pueden ser desplazadas a otras zonas. Sin embargo, ese proceso no puede ser forzado por rezonificaciones inconsecuentes con la política pública estatal.

IV.

La conclusión a la que hemos llegado al discutir el segundo señalamiento de error se refuerza al examinar las controversias específicas relacionadas al cumplimiento de varias disposiciones del Reglamento de Zonificación que tienen tangencia sobre la práctica que los Planes de Usos de Terrenos para el área metropolitana de San Juan pretenden evitar.

A.

La Asociación de Residentes argumenta que la Junta de Planificación incumplió con la seccción 4.06 del Reglamento de Zonificación, la cual requiere que la parte promovente de una rezonificación someta a la Junta un memorial explicativo que contenga la siguiente información:

> Una descripción clara y completa del sector, su localización, características sobresalientes, importancia agrícola, histórica, escénica, cultural o natural, razones que apoyan la solicitud de cambio de zonififación, y el beneficio que derivaría la comunidad o el sector con respecto al mismo.

El Reglamento de Zonificación revela claramente la naturaleza del memorial explicativo y su rol en el esquema de revisión de las zonificaciones promulgadas por la Junta de Planificación. Se trata de

un documento de trabajo que le permite a la Junta conocer la naturaleza de la rezonificación solicitada, las condiciones sociales, culturales e históricas del área que se vería afectada por la rezonificación y la deseabilidad de realizar el cambio a la luz del beneficio que derivaría la comunidad o sector de aprobarse el cambio. Ningún otro documento requerido por el Reglamento de Zonificación en esta etapa le permite a la Junta de Planificación obtener esta información, la cual, indudablemente, le permite colocarse en condiciones óptimas para evaluar la conveniencia de realizar la rezonificación.[10]  De ahí se deriva la importancia y centralidad del memorial explicativo como documento descriptivo de la realidad imperante en el sector objeto de la solicitud de rezonificación.

En el presente caso, la Asociación de Residentes nos plantea que la Junta de Planificación violó la referida disposición reglamentaria al aprobar la rezonificación sin que el memorial explicativo sometido por el señor Fernández Martínez cumpliera los requisitos de la sección 4.06 del Reglamento.  Tiene razón.

El memorial explicativo sometido por el promovente de la rezonificación contiene sólo la siguiente información:

> Se propone rezonificar un solar propiedad del Sr. Manuel Fernández Martínez, en C-1 ó CO-1, el mismo esta [sic] localizado en la  Calle # 2, Blq. A-19, urbanización Parkside, Caparra Hgts. Guaynabo, P.R. El cambio de zonificación se basa en que el uso actual que se le esta [sic] dando al solar es comercial, ya que en las facilidades se encuentran unas oficinas de Great Concept, dedicada al mercadeo de productos.

---

[10]  El Reglamento de Zonificación requiere que cuando no sea por iniciativa de la Junta de Planificación, ésta podrá considerar la rezonificación de un sector o solar bajo uno de los distritos de rezonificación establecidos por el Reglamento cuando la parte promovente someta, además del memorial explicativo, la siguiente información: evidencia de haber notificado a los vecinos la intención de rezonificar, (según los criterios que el propio reglamento establece); un plano de localización con información sobre el Norte, la propiedad objeto de la petición, las propiedades de los vecinos que han sido notificados y los usos circundantes; y la cabida del solar en metros cuadrados.  La Junta podrá requerir aquella información adicional que estime pertinente o dispensar a una parte de la presentación de aquella información cuando se demuestre que resulta imposible cumplir con lo requerido.

El área donde ubica el solar, esta [sic] rodeado de zonificaciones comerciales; colindando por el lado Norte se encuentran unos solares comerciales C-3, al Este a menos de 100 metros hay zonificaciones C-4 (Caparra Shopping Center) al Oeste aproximadamente a 100 metros un C-4, (San Patricio Shopping Center).

En el local se han preparado 5 estacionamientos que son suficiente para la cantidad de personas que laboran en el local, ya para la cantidad de personas que laboran en el local, ya que esta [sic] es una oficina que utiliza poco personal.

El solar objeto de este cambio de zonificación tiene las siguientes colindancias:

Sin ningún otro particular, queda de usted

Atentamente;

Daniel Gómez
Fdo.

Apéndice, a la pág. 28.

Este memorial explicativo difícilmente puede colocar a la Junta de Planificación en condiciones adecuadas para concebir el impacto de la rezonificación propuesta. Nótese que no contiene una discusión respecto a aspectos esenciales que el Reglamento de Zonificación requiere que se incluyan, tales como una descripción **clara y completa** del área que sería afectada por la rezonificación, así como las razones que apoyan la solicitud de cambio de zonificación y el beneficio que derivaría la comunidad o el sector con respecto al mismo.

Más aún, el referido memorial omite información significativa ya que está huérfano de una descripción de las colindancias del solar objeto de la solicitud. Debe advertirse que el mismo señala que "[e]l solar objeto de este cambio de zonificación tiene las siguientes colindancias:". Luego de ello no especifica cuáles son tales colindancias. Esta omisión resulta significativa, más aún cuando las únicas zonas circundantes que se destacan en el memorial explicativo se encuentran a una distancia de alrededor de 100 metros del solar objeto de la solicitud de rezonificación. Asimismo, no hemos hallado ningún otro documento en el expediente que supla esta clara deficiencia. Por ello, resulta forzoso concluir que al no incluir en el memorial

explicativo toda la información requerida por la sección 4.06 del Reglamento de Zonificación, o al menos, aquella información pertinente que razonablemente pudo haber obtenido el allí peticionario Fernández Martínez, la solicitud de rezonificación era defectuosa.

Estimamos que esta omisión fue significativa y que la Junta de Planificación debió rechazar de plano la solicitud, más aún cuando no podía dispensar a Fernández Martínez del cumplimiento de lo requerido en la sección (según lo contempla el Reglamento de Zonificación), toda vez que no se satisfizo lo dispuesto en la propia sección 4.06 del Reglamento. Esta sección condiciona la otorgación de una dispensa del cumplimiento de cualquiera de los requisitos establecidos en ella por parte de la Junta, a que la parte promovente demuestre satisfactoriamente que no puede cumplirlos. Indica, además, la sección que "[e]n tal circunstancia el peticionario deberá solicitar la dispensa mediante carta que fundamente la petición de dispensa". Reglamento de Zonificación, Sección 4.06. En el expediente no hemos encontrado ninguna solicitud escrita al respecto, ni ninguna razón que justifique el incumplimiento.

B.

Como segunda razón para solicitar la revocación de la autorización de rezonificación, la Asociación de Residentes destaca que la rezonificación autorizada por la Junta de Planificación viola la sección 84.03(2) del Reglamento de Zonificación. Dicha sección requiere que se provea un (1) espacio para estacionamiento de vehículos por cada veinticinco (25) metros cuadrados de área bruta dedicada a oficina.[11]

---

[11] El texto completo de esta sección dispone:

84.03 -- Provisión de Espacios de Estacionamiento de Vehículos -- Los espacios mínimos de estacionamiento de vehículos a proveerse se determinarán según se indica a continuación:
[...]
2. Oficinas, excepto las que se atienden más adelante en este Inciso -- Un (1) espacio por cada veinticinco (25) metros

Surge de la Resolución apelada ante nos, que el solar objeto de la rezonificación tiene una cabida total de 480 metros cuadrados. Véase, Resolución Z-4-A-24, Apéndice, a la pág. 6; véase además, Solicitud de enmienda al mapa de zonificación, Apéndice, a la pág. 29. Del expediente surge que el área bruta dedicada a oficina consiste de unos doscientos (200) metros cuadrados. De acuerdo a la sección del Reglamento de Zonificación antes citado, la estructura debía proveer un espacio de estacionamiento "por cada veinticinco (25) metros cuadrados, o parte de éstos, de área bruta de piso dedicado a tales fines". Surge claramente que, a la luz de esta disposición reglamentaria, el solar rezonificado debía contar con un número mínimo de ocho (8) estacionamientos para vehículos. En el memorial explicativo, aseguran contar con sólo cinco (5) espacios para ello, lo que claramente viola la sección 84.02 del Reglamento de Zonificación.

Más aún, en el memorial explicativo presentado ante la Junta de Planificación los promoventes aseguran que esa cantidad de estacionamientos es suficiente para suplir las necesidades de espacios de estacionamientos "para la cantidad de personas que laboran en el local". Debemos advertir, en primer lugar, que Fernández Martínez no expresa el número de empleados que laboran en su oficina. En segundo lugar, es preciso destacar que el número de estacionamientos mínimos que el Reglamento de Zonificación exige que se habiliten para operar una oficina como la que se describe en el presente caso tiene como objetivo atender no sólo las necesidades de las personas que laboran en el local, sino también las necesidades de la oficina en virtud de la clientela que será atendida en ella. La razón aducida por el promovente Fernández Martínez no justifica evadir el claro mandato reglamentario, más aún cuando pretende operar una oficina dedicada al mercadeo de productos comerciales, lo que sin duda requerirá un número de

---

cuadrados, o parte de éstos, de área bruta de piso dedicada a tales fines. Reglamento de Zonificación, Sección 84.03(2).

estacionamientos mayor al requerido para ubicar sólo a los empleados que laborarán en ella.

Por otro lado, la Asociación de Residentes presentó ante el organismo administrativo una fotografía del local de Fernández Martínez. Dicha fotografía forma parte del expediente administrativo y ella revela claramente que el área destinada para estacionamiento incumple otras disposiciones reglamentarias del Reglamento de Zonificación.

El Reglamento de Zonificación exige que:

> [l]as áreas de estacionamiento de vehículos se diseñarán en **forma funcional, esto es, para que cualquier vehículo pueda moverse sin que se vea impedido de hacerlo por otros vehículos estacionados, a menos que ello se disponga así en este Reglamento, ni obligado a entrar en el tránsito en retroceso.** Reglamento de Zonificación, sección 84.02(1).

Contrario al claro mandato reglamentario, el local de Fernández Martínez provee un área para que los autos sean estacionados en una sola hilera, esto es, uno tras otro. Esto, según los términos de la precitada sección reglamentaria, equivale a un solo estacionamiento funcional, ya que no permite que los vehículos sean movidos sin que lo impidan otros vehículos estacionados.

No negamos que la Junta de Planificación posee cierta flexibilidad para discernir y actuar dentro del ámbito de los poderes delegados. Sin embargo, en el presente caso no surge del expediente que la Junta de Planificación haya dispensado a Fernández Martínez del cumplimiento de estos requisitos, ni que existan razones para que dicha entidad pudiera haberlo hecho.

C.

La Asociación de Residentes plantea también que la Junta de Planificación no actuó de conformidad con la sección 4.06 del Reglamento de Zonificación Núm. 4 que dispone lo siguiente:

> Cuando se tratare de una solicitud de enmienda a una pertenencia para la cual la Junta había denegado anteriormente una solicitud similar, será necesario que el peticionario demuestre por escrito que ha habido cambios sustanciales en las condiciones del área o sector donde radica la petición de

cambio, en comparación con las existentes cuando se tomó dicho acuerdo, que amerite que la Junta considere nuevamente la solicitud. De no demostrarse los cambios en las condiciones, la Junta podrá actuar sobre la solicitud, denegándola sin que sea objeto de una nueva vista pública. La denegatoria se notificará a la parte interesada mediante resolución. Véase, Montoto v. Lorie, supra.

Argumentan los recurrentes que la Junta de Planificación había denegado solicitudes de rezonificación similares a la solicitada y aprobada a Fernández Martínez en solares aledaños al de éste. Por ello, razonan que la Junta debió observar las normas procesales establecidas en la precitada disposición reglamentaria.

No negamos que las actuaciones de la Junta de Planificación respecto a solares colindantes o cercanos a aquel que es objeto de una solicitud de rezonificación resultan pertinentes para evaluar la adecuacidad de tal solicitud. Sin embargo, la disposición reglamentaria que la Asociación de Residentes señala como fundamento de su reclamo es invocable sólo en aquellas instancias en las que la Junta de Planificación deniega previamente una solicitud de rezonificación respecto a un solar o propiedad y posteriormente se presenta una solicitud de rezonificación similar respecto a esa misma propiedad. No se refiere a solicitudes similares de rezonificación respecto a distintos solares o propiedades, como tratan los ejemplos que nos plantean la Asociación de Residentes. Por lo tanto, consideramos inmeritorio el señalamiento de la Asociación de Residentes sobre este aspecto.

A pesar de lo anterior, estimamos que la Junta actuó de forma arbitraria y caprichosa al autorizar la rezonificación impugnada ya que la solicitud no cumplió con la sección 4.06 del Reglamento de Zonificación y la estructura ubicada en el solar objeto de la solicitud carecía del número mínimo de estacionamientos requerido por la sección 84.03(2) del mismo reglamento. Erró la Junta de Planificación al autorizar la rezonificación solicitada sin que se subsanaran estas serias deficiencias.

V.

En resumen, la solicitud de rezonificación presentada por el señor Fernández Martínez ante la Junta de Planificación careció de información esencial que requiere el Reglamento de Zonificación en su sección 4.06. Además, la estructura existente en el solar de su propiedad no satisface la sección 84.03(2) del referido reglamento, la cual regula el número mínimo de estacionamientos que deberían ser provistos en el área. Por último, la autorización de la rezonificación por la Junta de Planificación constituyó una zonificación aislada, lo que sin duda invalida la rezonificación autorizada. Ante todo lo anterior, procede revocar la resolución que autorizó la referida rezonificación y reinstalar la zonificación de distrito R-3 previamente existente. Cualquier operación en el referido solar de un uso no autorizado por la zonificación reinstalada, constituye una violación de ley castigable por las leyes y reglamentos que rigen nuestro ordenamiento de zonificación.

Se emitirá la Sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación de Residentes
de Park Side, Inc.

   Apelante

   v.                                    AA-96-15

Junta de Planificación
de Puerto Rico

   Apelado

SENTENCIA


San Juan, Puerto Rico, a 15 de diciembre de 1998.


        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Resolución emitida el 20 de septiembre de 1995 por la Junta de Planificación en aquella parte que autorizó la rezonificación del solar localizado en la Calle A-2, número 19 de la Urbanización Park Side de Guaynabo de la categoría Distrito Residencial General (R-3) a la categoría Distrito Comercial de Oficinas Uno (CO-1).

        Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                        Isabel Llompart Zeno
                     Secretaria del Tribunal Supremo