# 2006 DTA 43

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

ASOCIACIÓN DE RESIDENTES DE LA URBANIZACIÓN SAGRADO CORAZÓN, INC.
Parte Interventora-Recurrente

v.

JUNTA DE PLANIFICACIÓN DE P.R., HON. ÁNGEL DAVID RODRÍGUEZ
Agencia-Recurrida

SUCESIÓN GREGORIA PACHECO P/C ING. JESÚS TAMARGO
Proponente-Recurrida

Núm. KLRA-05-00050

San Juan, Puerto Rico, a 31 de enero de 2006

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
el Juez Aponte Hernández y el Juez Vivoni del Valle

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte recurrente, Asociación de Residentes de la Urbanización Sagrado Corazón, nos solicita que revoquemos la resolución emitida el 22 de diciembre de 2004, por la Junta de Planificación. Mediante la misma, el Foro administrativo declaró no ha lugar la solicitud de reconsideración a la resolución emitida el 22 de julio de 2004, la cual aprobó la Consulta de Ubicación Número 2002-17-0660-JPU, para la construcción de un proyecto comercial.

Por los fundamentos que exponemos a continuación, se revoca la resolución recurrida.

### I

La Sucesión Gregoria Pacheco, (en adelante, proponente o recurrida), por conducto del ingeniero Jesús R. Tamargo (en adelante, Ing. Tamargo), presentó una consulta para la ubicación de un proyecto comercial en una finca con cabida de 1.77 cuerdas, en la Carretera P.R. Número 176, kilómetro 1.6, en el Barrio Cupey del Municipio de San Juan.

El Ing. Tamargo es dueño de la compañía Unlimited Storage Corporation, que se dedica al negocio de Mini Almacenes y está interesado en comprar la propiedad.

El 5 de agosto de 2003, la Junta de Planificación (en adelante, Junta) celebró vista pública a la que compareció la Asociación de Residentes de la Urbanización Sagrado Corazón, Inc. (en adelante, Asociación). La Asociación alegó, en dicha comparecencia, que la ubicación del referido proyecto comercial afectará negativamente a la Urbanización Sagrado Corazón, al corredor ecológico de San Juan y al Arboretum de Cupey.

El 7 de abril de 2004, la Junta declaró no ha lugar la solicitud de inspección ocular solicitada por varios comparecientes; y el 13 de julio de 2004, la Oficial Examinadora rindió un informe en el cual no recomendó la aprobación del proyecto.

Así las cosas, el 22 de julio de 2004, **[1]** la Junta dictó resolución, mediante la cual aprobó la consulta presentada.

El 30 de agosto de 2004, la Asociación solicitó Reconsideración; y el 10 de septiembre de 2004, la Junta

acogió la solicitud de reconsideración, la cual fue referida a la Oficina de Asuntos Legales. Ésta a su vez hizo varios señalamientos sobre deficiencias en la resolución de la Junta. No obstante, el 22 de diciembre de 2004, la Junta declaró no ha lugar la solicitud de reconsideración, [2] quedando así en vigor la consulta de ubicación.

Inconforme, el 26 de enero de 2005, la Asociación presentó ante este Tribunal el recurso que nos ocupa, señalando que:

*"Erró la Junta al autorizar la consulta mediante la consideración de un Estudio de Tránsito sometido después de la vista pública que nunca fue notificado a las partes en violación al Debido Proceso de Ley.*

*Erró la Junta al adjudicar el caso sin tener evidencia sustancial en récord para apoyar su decisión contrario al mandato de Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. 263 (1999).*

*Erró la Junta al aprobar la consulta sin tener evidencia que sustente su decisión cuando tanto la Oficial Examinadora como su Oficina Legal rindieron informes contrarios al proyecto.*

*Erró la Junta al autorizar la consulta cuando el proyecto no cumple con el Plan de Ordenación Territorial del Municipio de San Juan."*

Luego, el 1 de abril de 2005, la Junta compareció ante nos y solicitó la devolución del caso para verificar con los proponentes información en su poder acerca de la intención de desistir de la consulta. El 27 de mayo de 2005 declaramos no ha lugar la solicitud de devolución del caso.

Recientemente, el 3 de enero de 2006, el interventor Esteban González Carminely presentó un escrito intitulado *Moción en Auxilio de Jurisdicción*. Examinado el mismo, lo declaramos no ha lugar.

Con el beneficio de las comparecencias de las partes y del interventor, pasamos a resolver.

## II

La Junta de Planificación es la entidad creada por ley con el objetivo principal de guiar el desarrollo integral y balanceado de Puerto Rico. La ley que creó el organismo le confirió amplios poderes para clasificar los terrenos en zonas o distritos y para establecer las normas que guiarán su uso y desarrollo. Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62 y siguientes; *Asoc. Res. Park Side, Inc. v. J.P.,* 147 D.P.R. 277, 284 (1998); *Arenas Procesadas, Inc. v. E.L. A.,* 132 D.P.R. 593, 607-608 (1993).

Entre las determinaciones que la Junta está facultada a tomar están·las relacionadas a las solicitudes de consultas de ubicación. Se trata del vehículo administrativo procesal para que evalúe, pase juicio y tome la decisión que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones de rigor proveen para que se consideren. *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64 (1998); *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70 (1999).

Al considerar y resolver una consulta de ubicación, la Junta ejerce una función de naturaleza adjudicativa. La Junta debe decidir una consulta de ubicación fundamentándose en la totalidad del expediente, mediante una resolución que incluya las determinaciones de hechos y las conclusiones de derecho en las cuales se fundamente. *Misión Ind. P.R. v. J.P., supra,* a las págs. 128-129; *Montalvo v. Mun. de Sábana Grande,* 138 D.P. R. 483, 488-489 (1995); Art. 32 de la Ley Núm. 75, 23 L.P.R.A. sec. 63 (d).

## III

De otra parte, al ejercer la función de revisión judicial nos corresponde determinar: 1) si el remedio concedido por la agencia fue apropiado; 2) si las determinaciones de hechos efectuadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y 3) si las conclusiones de derecho fueron correctas. *Rivera v. A & C Development Corp.*, 144 D.P.R. 450, 460-461 (1997); D. Fernández Quiñones, *Derecho Administrativo*, Colombia, Ed. Forum, 2001, págs. 533-534.

La Sec. 3.1 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2151, dispone entre otras cosas, que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: 1) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; 2) Derecho a presentar evidencia; 3) Derecho a una adjudicación imparcial; 4) Derecho a que la decisión sea basada en el expediente.

La Sec. 3.13 de la LPAU, 3 L.P.R.A. sec. 2163 (b), requiere que en todo procedimiento adjudicativo formal, el funcionario que presida la vista ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación.

Lo anterior preceptúa que a las partes envueltas en un procedimiento adjudicativo se le garantice al menos las protecciones básicas del debido proceso de ley. Así, pues, *"[p]or la naturaleza de los poderes delegados, requerimos que los tribunales administrativos a nivel apelativo adopten procedimientos que le permitan al apelante una oportunidad de ser oído para defenderse y presentar su caso en un proceso con las garantías adecuadas....[e]ntre estas garantías, una parte afectada tiene derecho a presentar toda la prueba necesaria para sostener su reclamo, así como refutar oralmente o por escrito la evidencia sometida en su contra...."*. *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230-231 (1987).

Debemos señalar que es norma firmemente establecida para la revisión judicial que los tribunales apelativos han de conceder una gran consideración y deferencia a las decisiones administrativas, en vista de la vasta experiencia y el conocimiento especializado de la agencia, en los asuntos que le han sido encomendados. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70, 80 (1999); *Misión Ind. P.R. v. J.P., supra*, a las págs. 129-130.

Con relación a las determinaciones de hechos de una agencia administrativa, el Tribunal Supremo reiteradamente ha resuelto que las determinaciones de hechos adoptadas por los organismos administrativos serán sostenidas por los tribunales si se basan en evidencia sustancial que obra en el expediente administrativo. Sec. 4.5 de la LPAU, 3 L.P.R.A. sec.2175. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70, 75 (2000); *Costa, Piovanetti v. Caguas Expressway*, 149 D.P.R. 881, 889 (1999); *Ramírez v. Depto. de Salud*, 147 D.P.R. 901, 905 (1999); *Misión Ind. P.R. v. J.P., supra*, a la pág. 131.

La evidencia sustancial es aquella evidencia relevante que una mente razonable pueda aceptar como adecuada para sostener una conclusión. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hechos, la evidencia debe ser considerada en su totalidad. *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra*, a la pág. 75; *Ramírez v. Depto. de Salud, supra*, a la pág. 905; *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). La norma de evidencia sustancial ... persigue evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor. *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85, 95 (1997).

Así es que, para convencer al tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord

que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda concluirse que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración. *Ramírez v. Depto. de Salud,* supra, a la pág. 905; *Misión Ind. P.R. V. J.P.,* supra, a la pág. 131; *Metropolitana, S.E. v. A.R.P.E.,* 138 D.P.R. 200, 213 (1995); *Hilton Hotels v. Junta de Salario Mínimo,* supra, a la pág. 686. Si la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez v. Depto. de Salud, supra,* a la pág. 905.

La calidad y cantidad de la evidencia, así como el rigor de la admisibilidad o lo que es lo mismo la aplicación de los preceptos básicos de las reglas de evidencia, deben ser tomadas en consideración en la determinación de si el récord contiene la evidencia sustancial para sostener la determinación. Falta de calidad y cantidad en la evidencia pueden y deben mover al tribunal en revisión a examinar con detenimiento las bases y fundamentos legales de la decisión de la agencia. Ello, sin lugar a dudas, causará una interacción entre cuestiones de hechos y cuestiones de derecho. D. Fernández Quiñones, *supra,* págs. 556-557.

Por otra parte, las determinaciones de derecho que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia, pueden ser revisadas en todos sus aspectos por el tribunal. Sec. 4.5 de la LPAU, 3 L.P.R.A. sec. 2175; *O.E.G. v. Rodríguez y otros,* 159 D.P.R. ___ (2003), **2003 J.T.S. 51,** a la pág. 798. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. *P.R.T.C. v. J. Reg. Tel. de P.R.,* 151 D.P.R. 269, 282 (2000). Al contrario, los tribunales le reconocen gran peso y deferencia a las interpretaciones y conclusiones hechas por los organismos administrativos de las leyes de las que son custodios. *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra,* a la pág. 75; *Misión Ind. P.R. v. J.P., supra,* a la pág. 132.

El criterio rector para los tribunales, será la razonabilidad en la actuación de la agencia recurrida. Así pues, al realizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa. No obstante, la deferencia reconocida no equivale a la renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. *Reyes Salcedo v. Policía de P.R., supra,* a la pág. 94; *Fuertes y otros v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993); *Rodríguez v. Comisión Industrial,* 99 D.P.R. 368, 376 (1970). La deferencia judicial al *"expertise"* administrativo, sin embargo, cede ante una actuación irrazonable o ilegal. *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra,* a la pág. 76. La interpretación de la agencia también cede cuando la misma produce resultados inconsistentes o contrarios al propósito del estatuto interpretado y a su política pública. *Municipio de San Juan v. J.C.A.,* 149 D.P.R. 263, 280 (1999).

Según expuesto en *Adorno Quiles v. Hernández,* 126 D.P.R. 191, 195 (1990), *"[...] al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa."* Finalmente, el foro judicial podrá sustituir el criterio del organismo administrativo por el propio, sólo en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. *Misión Ind. P.R. v. J.P., supra,* a las págs. 134-125.

## IV

El primer y segundo errores están relacionados entre sí, por lo que los consideraremos conjuntamente.

El primer error plantea la violación al debido proceso de ley, consistente en haber tomado en consideración un estudio de tránsito sometido con posterioridad a la vista, el cual no fue notificado a las partes. El segundo error plantea que la Junta no tuvo ante sí evidencia sustancial para apoyar su decisión.

El aviso de invitación a la vista pública específicamente indicaba que en la exposición del caso el proponente informaría sobre los accesos vehiculares al proyecto y el impacto del tránsito que pueda generar el proyecto sobre las vías existentes en el sector. Durante la vista pública, la Oficial Examinadora llamó la atención a la parte proponente de que el Memorial Explicativo en relación al tránsito que generaría el proyecto, no era suficiente y que, por lo tanto, era necesario que se preparase el estudio de tránsito requerido por la Autoridad de Carreteras en su comunicación del 25 de noviembre de 2002. Las justificaciones sobre el tránsito en que se amparó el proponente para contestar el requerimiento de estudio, están contenidas en el Memorial Explicativo del proyecto que sometió a la Junta el 9 de agosto de 2002.

Sin embargo, la comunicación de la Autoridad de Carreteras contiene requerimientos de los detalles del ensanche, accesos, obras de desagüe, así como también considerar el efecto de otros desarrollos propuestos en el área que pueda impactar la vía y la instalación de sistemas de semáforos, conjuntamente con el requerimiento de una aportación monetaria para las mejoras necesarias en la infraestructura vial del área.

Al momento de celebrarse la vista pública, el 5 de agosto de 2003, ya existía el requerimiento de la Autoridad de Carreteras al proponente sobre un estudio de tránsito que evaluara las condiciones del tránsito presentes y futuras y que se determinara el impacto que el proyecto tendría en dicho sector.

El 22 de diciembre de 2003, en respuesta al señalamiento sobre el requisito del estudio de tránsito y los aspectos ambientales, el proponente envió comunicación a la Junta en la cual hizo referencia al estudio de tránsito enviado a la Autoridad de Carreteras el 18 de diciembre de 2003.

Posteriormente, en el informe rendido por la Oficial Examinadora se desprende que la Autoridad de Carreteras tuvo oportunidad de evaluar el estudio de tránsito sometido por el proponente.

Según comunicación de la Autoridad de Carreteras de 7 de abril de 2004, el estudio sometido por la parte proponente no consideró los viajes generados por los proyectos que se han desarrollado en el área a partir del año 2000; no se realizaron observaciones de campo y conteos vehiculares; no se consideró el efecto de otros desarrollos en el área; y tampoco se incluyó el análisis operacional de la intersección formada por el acceso propuesto y las intersecciones más importantes en el área.

A pesar de que la Autoridad de Carretera hizo tales señalamientos al estudio de tránsito, no le requirió al proponente la preparación de un *"Addendum"*, condicionado a que se cumpliese con varias recomendaciones y requerimientos.

No obstante, en la resolución emitida el 22 de julio de 2004, la Junta incorporó el contenido de la comunicación de la Autoridad de Carreteras de 25 de noviembre de 2002, que contiene diversas recomendaciones sobre el tránsito. Nótese que es aquí donde la Autoridad le requiere al proponente que efectúe el estudio.

Cabe señalar que de esta comunicación no surge notificación a la Asociación. Por otra parte, la Junta en su escrito de oposición ante este Tribunal, nos indica que luego de la vista, el estudio de tránsito estuvo disponible en el expediente y fue notificado a la parte opositora, Ing. Esteban González representante de Arboretum Cupey.

En el caso de *López v. Junta de Planificación*, 80 D.P.R. 646 (1958), el Tribunal Supremo reafirmó que el derecho a una vista ante la Junta de Planificación no tendría sentido alguno si se le permitiera al foro administrativo fundar su decisión en evidencia recibida fuera de la audiencia sin el conocimiento de las partes interesadas y sin dar a éstas la oportunidad de rebatirla o explicarla mediante la repregunta o la presentación de otra evidencia en contrario.

Por otra parte, en *López Santos v. Asociación de Taxis de Cayey,* 142 D.P.R. 109 (1996), el Tribunal Supremo anuló una resolución de la Comisión de Servicio Público que consideró prueba que no constaba en el expediente administrativo. Como fundamento de esa decisión, señaló que si a una parte no se le concede oportunidad de examinar evidencia utilizada en su contra, esto es, oportunidad de confrontarse con ésta y de responder, se le violan las garantías fundamentales.

Como reconoce la Junta ante este Tribunal, su actuación en respuesta a una consulta de ubicación presentada ante su consideración es una actuación en su función adjudicativa. *Misión Ind. P.R. v. J.P., supra,* a las págs. 128-129; *Montalvo v. Municipio de Sabana Grande, supra,* a las págs. 488-489. A ésta aplican las garantías que conforman el debido proceso de ley, disponible a todas las partes afectadas. Los opositores, incluyendo la Asociación, son partes afectadas por la decisión recurrida, como se deduce de sus planteamientos ante la agencia y ante este foro.

Es evidente que la Junta erró al considerar evidencia con posterioridad a la vista que no fue notificada a la Asociación, y al no proveer nueva vista pública para la consideración y oportunidad de refutación de ésta. *López v. Junta de Planificación, supra,* a la pág. 670. La necesidad de considerar dicho informe demuestra que la Junta no tenía ante sí evidencia sustancial para apoyar su decisión, por lo que también cometió el segundo error.

## V

Señala la Asociación como tercer error que la agencia aprobó la consulta sin tener evidencia que sustentara su decisión, aun cuando la Oficial Examinadora y la Oficina Legal de la Junta rindieron informes contrarios a la aprobación del proyecto.

El Tribunal Supremo ha expresado que las determinaciones de hechos de las agencias administrativas deben ser lo suficientemente definidas para poner a las cortes en posición de revisar de forma inteligente la decisión del organismo administrativo y determinar si los hechos probados por la agencia ofrecen una base razonable para su decisión. Así, la decisión de la agencia debe exponer los fundamentos de hechos, tanto los hechos básicos probados como las inferencias de hechos que en última instancia creyó justificadas. *Misión Ind. P.R. v. J.P., supra,* a la pág. 152; *López v. Junta de Planificación, supra,* a las págs. 667-668; *Godreau & Co. v. Com. Servicio Público,* 71 D.P.R. 649, 655-656 (1950).

Las decisiones deben reflejar que la agencia ha considerado y resuelto los conflictos de pruebas, y sus determinaciones deben describir tanto los hechos probados como los que fueron rechazados. La expresión de los fundamentos de una decisión no puede ser pro forma, y debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración. *Mun. de San Juan v. J. C.A., supra,* a la pág. 280; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425 (1997). Lo importante es que las determinaciones se refieran a los hechos básicos, sin que la agencia tenga que anotar cada conclusión con evidencia específica presentada. *Misión Ind. P.R. v. J.P., supra,* a la pág. 152; *Hilton Hotels v. Junta de Salario Mínimo, supra,* a la pág. 684.

En procedimientos adjudicativos informales se exige que la agencia exponga una explicación de las bases sobre las que descansa su decisión, de forma que el tribunal tenga fundamentos para hacer su determinación en cuanto a si ésta es arbitraria o caprichosa. *Mun. de San Juan v. J.C.A., supra,* a las págs. 280-281; *Rivera Santiago v. Srio. de Hacienda,* 119 D.P.R. 265, 275 (1987). Aun cuando no se exige una explicación basada en determinaciones de hechos a la manera de los procedimientos formales, en la adjudicación de procedimientos informales deben mediar razones suficientes que pongan en conocimiento a las partes y al tribunal de los fundamentos que propiciaron tal decisión. *Mun. de San Juan v. J.C.A., supra,* a la pág. 281; *Godreau & Co. v. Com. Servicio Público,* a las págs. 655-657.

Como expusiéramos anteriormente, el proceso de consulta de ubicación es de naturaleza adjudicativa.

*Misión Ind. P.R. v. J.P., supra,* a las págs. 128-129; *Montalvo v. Mun. de Sabana Grande, supra,* a las págs. 488-489. La revisión de una resolución administrativa de naturaleza adjudicativa debe hacerse mediante un examen de todo el expediente administrativo, de modo que el tribunal pueda determinar si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial. Sec. 4.5 de la LPAU, 3 L.P.R.A. Sec. 2175.

La sección 9.00 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, dispone que la Junta de Planificación tomará su determinación sobre las consultas de ubicación considerando la totalidad del expediente y emitirá su resolución incluyendo determinaciones de hechos y conclusiones de derecho que fundamenten el acuerdo tomado.

En la Resolución aprobando la consulta de ubicación emitida por la Junta el 22 de julio de 2004, nada se consigna sobre la razón para descartar la recomendación de la Oficial Examinadora en su informe determinando que se debía denegar la consulta solicitada.

El caso *Misión Industrial v. Junta de Planificación, supra,* resolvió que una agencia administrativa no tiene que acoger la totalidad del informe del Oficial Examinador, sino las partes que considere correctas. Contrario a la plena autoridad decisoria del *"Juez Administrativo",* en el caso del *"Oficial Examinador"* será otro componente de la agencia, quien basado en las conclusiones del Oficial Examinador y todo lo que componga el récord administrativo, habrá de tomar la decisión final administrativa. Sec. 3.3 de la LPAU, 3 L.P.R.A. Sec. 2153.

Si bien la Junta no viene obligada a acatar las determinaciones de hechos de un Oficial Examinador, éstas no deben descartarse si están sostenidas por la prueba presentada. Aunque el Oficial Examinador carece de autoridad para tomar una decisión final en el caso, ello no significa que sus conclusiones no merezcan la consideración del tribunal revisor, toda vez que las mismas forman parte del récord administrativo. *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 208 (1987). Por tanto, en casos en que la agencia no adopte las recomendaciones del Oficial Examinador, como el que nos ocupa, debe exponer las razones o fundamentos para apartarse de dichas recomendaciones. Al no hacerlo, somos de opinión que se viola el debido proceso de ley por no informarle adecuadamente a las partes los fundamentos de su determinación.

El 13 de julio de 2004, la Oficial Examinadora suscribió el *Informe sobre Audiencia Pública.* En el informe, con relación a los comentarios emitidos por algunas de las agencias administrativas que evaluaron el proyecto se dispuso lo siguiente:

*"1. La Autoridad de Carreteras y Transportación indicó que el proyecto no se afecta por las vías propuestas en el Programa de Construcción de Mejoras Permanentes. Sin embargo, al evaluar el estudio de tránsito encontró que no se consideró los viajes generados por los proyectos que se han desarrollado en el área, no se realizaron observaciones de campo y conteos vehiculares y no se consideró el efecto de otros desarrollos en el área.*

*2. El Departamento de Recursos Naturales, en carta fechada 27 de diciembre de 2002, manifestó que el proyecto deberá cumplir con sus recomendaciones. Requirió al proponente obtener de la Junta de Calidad Ambiental el permiso para el control de Erosión y Sedimentación. Indicó que debido a que los terrenos colindan con una quebrada, se debería dedicar a uso público una franja de terreno más una franja adicional. Además, indicó que el proyecto deberá cumplir con el Reglamento de Planificación Núm. 25 (Reglamento de Siembra, Corte y Forestación de Puerto Rico) y con el reglamento Núm. 13 de Planificación.*

*3. El Instituto de Cultura Puertorriqueña, en carta fechada 14 de noviembre de 2002, indicó que para efectos de endoso, el proponente tenía que radicar en la División de Arqueología del Instituto de Cultura Puertorriqueña una solicitud de evaluación arqueológica y pagar la cuota correspondiente, a tenor con el*

*Reglamento para la Radicación y Evaluación Arqueológica de Proyectos de Construcción y Desarrollo.*

*5. La Junta de Calidad Ambiental, en carta fechada 8 de octubre de 2003, hizo una serie de recomendaciones con las que deberá cumplir la parte proponente.*

*6. La Autoridad de Energía Eléctrica, en carta de 29 de enero de 2004, condicionó su endoso a que se conecte el proyecto al punto de conexión indicado en el plano; relocalización del transformador de 50 KVA; las aportaciones necesarias para mejorar al sistema eléctrico existente y servir el proyecto; extender su acometida primaria soterrada; y reubicación de líneas energizadas.*

*7. El Municipio de San Juan, en carta fechada 20 de agosto de 2003, indicó que para poder emitir sus comentarios, necesitan conocer la posición de las distintas agencias.*

*8. El Departamento de Agricultura, en carta fechada 5 de septiembre de 2003, indicó que no tiene objeción a la propuesta.*

*9. La Autoridad de Desperdicios Sólidos, en carta fechada 10 de mayo de 2004, indicó que queda por discutir el tema de desperdicios sólidos e indicar las estrategias de reciclaje a implantar durante la construcción y operación del proyecto."*

En el informe, la Oficial Examinadora expresó que según testimonio y documentación ofrecida durante la vista pública celebrada salió a relucir que en el área donde ubica el predio en cuestión ocurren inundaciones. Por otra parte, sostuvo que la Autoridad de Acueductos y Alcantarillados no emitió comentarios a la consulta presentada. Además, determinó que *"de la prueba testifical y documental que obra en autos podemos concluir con certeza que el proyecto propuesto impactará de forma negativa el sector que ubica"*. Por último, determinó que la topografía del terreno objeto de consulta es accidentada, por lo que, durante la fase de construcción, se anticipaba movimiento de tierra; y que esta actividad ocasionará el arrastre de sedimentación, erosión, generación de polvo fugitivo, deforestación y mayores inundaciones en el sector.

Por otra parte, luego de que los opositores solicitaran reconsideración de la resolución recurrida, la Oficina de Asuntos Legales de la Junta estudió los planteamientos de las partes y recomendó que *"en aquellas instancias en que la Junta entienda o no tome las recomendaciones del oficial examinador, quien realizó el análisis directo de la consulta, recoja en su Resolución el análisis para concluir en otra dirección"*.

Conforme a estos señalamientos, correspondía entonces a la parte proponente probar cuándo y en qué forma, cumpliría con los requisitos impuestos como condición para la aprobación de la consulta. Del informe de la Oficial Examinadora se desprende que a base de la prueba presentada no procedía conceder la autorización para la ubicación del proyecto hasta que se aclararan estas interrogantes.

En consecuencia, después de analizar los documentos en autos, es evidente que el dictamen recurrido no proporciona a este Tribunal la oportunidad de revisar adecuadamente la decisión administrativa. Era vital que la Junta expusiera claramente las bases sobre las que descansa su decisión, de forma tal que el tribunal tenga fundamentos para determinar si la misma es arbitraria o caprichosa. La decisión alcanzada por la Junta no convence a este Tribunal de que la agencia realmente consideró todos los planteamientos materiales a la decisión y ejerció su discreción de manera razonable. Por consiguiente, el tercer error señalado sí se cometió.

## VI

Por último, el cuarto señalamiento imputa que erró la Junta al autorizar la consulta cuando el proyecto no cumple con el Plan de Ordenación Territorial del Municipio de San Juan.

La Junta está facultada para adoptar Planes de Ordenación, según lo disponen las disposiciones de la Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. secs. 62c y 62j(14). Los Planes de Ordenación constituyen instrumentos de ordenación integral del territorio municipal y deberán proteger los suelos, promover el uso balanceado, provechoso y eficaz de los mismos, así como propiciar el desarrollo cabal de cada municipio.

Una vez el Plan Territorial entre en vigor, toda decisión sobre el suelo se hará de conformidad con el mismo, según lo establece el Art. 13.005 de la Ley Num. 81 de 30 de agosto de 1991, según enmendada, y la Sec. 7.01 del Reglamento Sobre los Planes de Ordenación Municipal y la Transferencia y Administración de Facultades, Reglamento de Planificación Núm. 24.

El Reglamento de Ordenación Territorial del Municipio de San Juan (en adelante Reglamento de San Juan), tiene como propósito:

*"[...] establecer las normas para guiar y controlar el uso, niveles de intensidad, desarrollo y redesarrollo de los suelos, con señalamientos sobre las características de las estructuras y el espacio público, dentro de los límites del Municipio de San Juan, con el fin de promover el desarrollo ordenado, racional e integral del territorio para asegurar el bienestar de las generaciones actuales y futuras; contribuir al desarrollo social y económico de todos sus habitantes; proteger, defender y conservar sus componentes naturales, incluyendo sus áreas verdes, sus áreas de recreación y sus zonas o sitios de interés histórico, arquitectónico, cultural, turístico, simbólico o arqueológico; revitalizar, rehabilitar y repoblar los centros y distritos urbanos tradicionales; redesarrollar sectores estratégicos del territorio municipal y promover el desarrollo integral de todas las áreas periferales de la ciudad. También busca establecer la más estrecha coordinación entre el desarrollador y las entidades responsables de la infraestructura necesaria para el uso propuesto, desde las etapas más tempranas de la tramitación que regirán la autorización de lotificaciones y urbanizaciones para asegurar que el proyecto internalice aquellos costos de la provisión de la infraestructura inherentes a su funcionamiento sin afectar la calidad o cantidad de servicio disponible a la comunidad o sector. Sec. 1.03 del Reglamento de San Juan."*

La Sec. 4.04 (a) (3), del Reglamento de San Juan, establece que la determinación que se tome sobre un proyecto de desarrollo extenso descansará en la evaluación de factores que presente y demuestre la parte interesada en el caso, basadas en, y sin limitarse a los siguientes factores: a) Conformidad del uso propuesto y su Intensidad con el Plan de Usos de Terrenos y con el Plan de Ordenación Territorial; b) Disponibilidad, programación y mejoras propuestas por el proyecto a la infraestructura del sector en que ubica; c) La forma en que el proyecto propicia el desarrollo integral del sector y mantiene o mejora las condiciones existentes; d) La viabilidad, adecuacidad y conveniencia del uso propuesto.

Además de cumplir con los requisitos establecidos mediante los referidos reglamentos, la Junta también podrá consultar a otros organismos gubernamentales que tengan relación con el proyecto bajo su consideración y podrá requerir al proponente y a los opositores información adicional, como son estudios técnicos más abarcadores.

La Oficial Examinadora, en su informe sobre la vista pública, señaló en sus determinaciones de hechos y conclusiones de derecho que: 1) El proyecto no está en armonía con los objetivos y estrategias del Plan de Usos del Terreno de San Juan y el estudio de tránsito presentado no fue adecuado; 2) El proyecto no cuenta con los comentarios de la Autoridad de Acueductos y Alcantarillado; y 3) El proyecto propuesto impactará de forma negativa el sector en que ubica.

Por otra parte, el Municipio de San Juan, en carta fechada 20 de agosto de 2003, indicó que para poder emitir sus comentarios necesitan conocer la posición de las distintas agencias que intervienen en el proceso,

además, de obtener copia de todo estudio que se le solicite a los proponentes. Además indicó que: *"está en vigor la Sec. 2.21, Requisitos Mandatorios para la Otorgación de Permisos del Reglamento de Ordenación. Esta sección dispone que previo a la otorgación de cualquier permiso se requerirá el cumplimiento mandatorio de lo dispuesto en las Secs. 4.06 y 2.20 (f) (1) del Reglamento. A esos fines se deberá requerir a todo proponente someter la certificación del Municipio de San Juan de cumplimiento con los requisitos y el pago de los cargos correspondientes"*.

Según surge de lo antes expuesto, la prueba presentada no cumplió con lo requerido por la Junta para la aprobación de la consulta de ubicación. La Junta en su Resolución no discute adecuadamente el Plan de Ordenación Territorial.

En fin, la Junta omitió la discusión de importantes aspectos contenidos en el informe de la Oficial Examinadora que sustenta su recomendación. El análisis hecho por el referido foro administrativo fue deficiente y no refleja su obligación ministerial de actuar conforme a las leyes y reglamentos. Tampoco su decisión refleja que se consideraron y resolvieron conflictos de la evidencia presentada.

Se cometió el cuarto error señalado.

## VII

Por los fundamentos antes relacionados, se revoca la resolución recurrida. En consecuencia, queda sin efecto la consulta de ubicación aprobada por la Junta de Planificación en el caso 2002-17-0660-JPU.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones