Aponte Hernández, Juez Ponente
*771 TEXTO COMPLETO DE LA SENTENCIA
La apelante, Asociación de Residentes de Altamira, nos solicita que revisemos la resolución C-2-A-57 notificada el 30 de junio de 2006 por la Junta de Planificación de Puerto Rico. En específico nos solicita que revoquemos la enmienda a la Hoja 8-B del Mapa de Calificación del Municipio de San Juan producto de las peticiones presentadas en los casos de rezonificación números 2003-17-0148-JPZ, 2003-17-0150-JPZ, 2003-17-0177-JPZ, 2003-17-0178-JPZ, 2003-17-0180, 2003-17-0181-JPZ, 2003-17-0182-JPZ, 2003-17-0200-JPZ, 2003-17-0201- JPZ, 2003-17-0210-JPZ, 2003-17-0211-JPZ y 2004-17-0206-JPZ. Mediante dicha enmienda, la Junta autorizó la rezonificación de 17 propiedades inmuebles ubicadas en la Calle Aldebarán de la Urbanización Altamira, de un Distrito Residencial General (R-3) a la categoría Distrito Comercial de Oficinas Uno, (CO-1).
Por los fundamentos que expondremos, se modifica la resolución recurrida a los fines de dejar sin efecto las enmiendas a la Hoja 8-B del Mapa de Calificación del Municipio de San Juan, y así modificada, se confirma.
*772 I
La Urbanización Altamira es una zona residencial localizada en el Municipio de Guaynabo que está compuesta por aproximadamente 200 unidades de vivienda. En los meses de febrero y marzo del 2003, se gestionó ante la Junta de Planificación un cambio de zonificación de 17 propiedades localizadas en la Calle Aldebarán de dicha urbanización. La intención era cambiar la zonificación de las propiedades de la categoría Distrito Residencial General (R-3) a una categoría Distrito Comercial de Oficina Uno (CO-1).
Según el Reglamento de Zonificación de Puerto Rico (Reglamento Número 4 de la Junta de Planificación), el Distrito R-3 fue establecido para clasificar “áreas residenciales desarrolladas o que puedan desarrollarse y en donde se permitirán diferentes tipos de viviendas en solares de trescientos (300) metros cuadrados o más”. Sección 13.01 del Reglamento de Zonificación. De otra parte, el Distrito CO-1 fue establecido para clasificar “áreas donde existan o puedan existir oficinas excepto las de alto volumen de clientela principalmente como transición entre otros Distritos comerciales y áreas residenciales”. Sección 18.01 del Reglamento de Zonificación.
Al momento de la solicitud de rezonificación, ocho de las propiedades operaban como establecimientos dedicados a oficinas administrativas, dos como oficinas de ingeniería, y una como oficina profesional. No consta en autos que dichas actividades estuviesen autorizadas conforme al ordenamiento de zonificación vigente.
La Asociación de Residentes de Altamira manifestó su oposición al cambio de zonificación solicitado. Alegó, que la solicitud de rezonificación no cumplía con valias disposiciones del Reglamento de Zonificación, ya que no contenía una descripción clara y completa del sector en el cual se proponía hacer la rezonificación, no señalaba cuáles eran las características sobresalientes del sector y no expresaba cuál sería el beneficio que derivaría la comunidad de la zonificación según lo requiere la reglamentación aplicable. Planteó, además, que la solicitud debía ser rechazada porque las propiedades no contaban con el número de estacionamientos requerido por el Reglamento de Zonificación, que la Calle Aldebarán es una calle sin salida, que el establecimiento de oficinas atraerá personas extrañas a la urbanización, que la urbanización posee condiciones restrictivas que prohíben el uso solicitado y que la concesión de la zonificación solicitada promueve el “spot zoning”, situación que es contraria a la política pública de la Junta de Planificación.
Luego de la celebración de las vistas públicas, el 30 de junio del 2006, la Junta de Planificación de Puerto Rico emitió la resolución C-2-A-57 Aprobando y Adoptando la Nueva Hoja Clave y las Hojas Enmendadas Número 2-A, 3-C, 3-D, 3-E, 5-E, 6-C, 6-D, 6-E, 6-F, 7-B, 7-C, 7-D, 7-E, 7-F, 7-G, 8-B, 8-C, 8-D, 8-E, 8-F, 8-G, 9-B, 9-C, 9-D, 9-F, 10-B, 10-D, 10-E, 11-C, 11-D, 11-E, 12-C, 12-D, 13-Dy 14-D del Mapa de Calificación de Suelos del Municipio de San Juan. Específicamente, la enmienda a la Hoja 8-B del Mapa de Calificación de Suelos del Municipio de San Juan rezonificó 17 propiedades ubicadas en la Calle Aldebarán de la Urbanización Altamira. Esta enmienda respondió a las siguientes solicitudes: 2003-17-0148-JPZ; 2003-17-0150-JPZ; 2003-17-0177- JPZ; 2003-17-0178-JPZ; 2003-17-0180-JPZ; 2003-17-0181-JPZ; 2003-17-0182-JPZ; 2003-17-0200-JPZ; 2003-17-0201-JPZ; 2003-17-0210-JPZ; 2003-17-0211-JPZ; 2004-17-0206-JPZ.
Inconforme, oportunamente la Asociación de Residentes de Altamira acudió ante nos y señaló los siguientes errores:
1. Erró la JP al permitir rezonificaciones aisladas en la Urbanización Altamira.
2. Erró la JP al no preparar los informes requeridos por la sección 2.3 de la LPAU.
3. Erró la JP al aprobar las rezonificaciones comerciales de la Calle Aldebarán a pesar de que la Urbanización Altamira tiene servidumbres en equidad que sólo permiten usos residenciales.
*773 4. Erró la JP al aprobar unas rezonificaciones que son contrarias al Plan de Ordenación Territorial del Municipio de San Juan y a las Ordenanzas Núm. 3 y 50 del Municipio.
5. Erró la JP al rezonificar predios que tenían menos de cinco (5) años de denegados por la JP y de los cuales los peticionarios no expresaron qué cambios sustanciales en las condiciones de los predios justificaban la radicación de las nuevas solicitudes de rezonificación.
6. Erró la Junta de Planificación al aprobar las solicitudes de rezonificación por carecer las mismas del Memorial Explicativo requerido por la Sección 4.06(5) del Reglamento 4.
7. Erró la JP al aprobar las solicitudes de rezonificación sin que las propiedades contaran con estacionamientos funcionales y sin que contaran con el número de estacionamientos requeridos por la reglamentación aplicable.
8. Erró la JP al aprobar la rezonificación del predio ubicado en la Calle Aldebarán Núm. 598 sin haberse notificado la intención de solicitar el cambio de zonificación de dicha propiedad.
9. Erró la JP al aprobar solicitudes de rezonificación donde los peticionarios sometieron información no veraz e incompleta.
Varios de los dueños de las propiedades en controversia, comparecieron conjuntamente mediante escrito en Oposición a Solicitud de Revisión. La agencia recurrida no compareció, a pesar del término adicional concedido para ello. Asimismo, el Municipio de San Juan presentó Escrito de Intervención a Favor del Recurso de Revisión.
II
La Junta de Planificación es una entidad creada por ley cuyo objetivo principal es guiar el desarrollo integral y balanceado de Puerto Rico. Para viabilizar esta importante función, la Asamblea Legislativa le confirió amplios poderes para clasificar y designar los terrenos en zona y distritos y para establecer las normas que guiarán su uso y desarrollo. Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sees. 62 et seq. Los reglamentos y mapas de zonificación aprobados con ese fin pretenden promover el uso más eficaz del limitado recurso tierra, de forma que se promueva el desarrollo urbano de una manera ordenada y lógica con el menor impacto adverso posible sobre el ecosistema. Asoc. Res. Park Side, Inc. v. J.P., 147 D.P.R. 277 (1998).
De conformidad con los poderes delegados, la Junta de Planificación elaboró el Reglamento de Zonificación. El Reglamento de Zonificación vigente crea varios tipos de distritos de zonificación, tales como residenciales, comerciales, industriales, agrícolas y para uso público, entre otros. Provee también una descripción de los propósitos de cada uno de estos tipos de distritos y sus diversas variantes y define sus posibles usos. A través de este proceso, la Junta de Planificación establece normas específicas sobre el uso de los terrenos y sobre las obras o estructuras que pueden ser construidas en ellos de forma que viabilice un desarrollo balanceado que a su vez garantice la salud y seguridad pública y la mejor convivencia humana. Asoc. Res. Park Side v. J.P., supra.
Los mapas de zonificación elaborados por la Junta de Planificación complementan el ordenamiento de zonificación en Puerto Rico. El propio Reglamento de Zonificación dispone que "[l]os mapas de zonificación que la Junta apruebfa] y adopt[a] forma[n] parte integral de y [rigen] conjuntamente con [el] Reglamento". Sección 4.14 del Reglamento de Zonificación. Estos mapas delimitan geográficamente los distritos que se describen en el Reglamento de Zonificación.
*774 Una vez establecida una zonificación en dichos mapas, la misma sólo podrá ser variada de conformidad con la Sección 4 del Reglamento de Zonificación. Esta sección dispone que la Junta de Planificación "podrá considerar cambios a la zonificación de determinado sector o solar por petición de alguna persona, funcionario u organismo o a iniciativa propia". Sección 4.04 del Reglamento de Zonificación. Asimismo, la sección 4.06 del Reglamento de Zonificación establece los requisitos procesales que deben cumplirse para efectuar la referida rezonificación.
Nuestro Tribunal Supremo se expresó en Montoto v. Lorie, 145 D.P.R. 30 (1998), sobre la aprobación de cambios de zonificación por la Junta de Planificación:
"[e]l procedimiento para adoptar o enmendar un reglamento o mapa de zonificación se rige por las disposiciones de la Ley de Planificación en la medida en que no estén en conflicto con la nueva Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". Luán Investment Corp, v. Román, 125 D.P.R. 533, 546 (1990).
La Junta de Planificación es un organismo creado para proteger los intereses y el bienestar de la ciudadanía en general en el descargo de la política pública de planificación y zonificación; E.L.A. v. Domínguez, 104 D.P. R. 468, 470 (1975). La Junta se estableció con el propósito de reglamentar todos los procedimientos necesarios para conseguir una uniformidad en la zonificación de nuestro país.
Por eso, ésta es imprescindible para resolver los problemas humanos, sociales y económicos derivados principalmente de: (1) la densidad de población en las áreas urbanas; (2) el tráfico y la circulación en el interior de la ciudad; (3) la centralización industrial e instalación de nuevas fábricas en el casco urbano; (4) la urgencia de proveer viviendas adecuadas, parques, espacios de recreación y descanso, luz y aire para la salud física y mental de los habitantes; (5) la necesidad de asegurar la armonía de conjunto y los valores estéticos de la comunidad[,] y (6) la obligación de conservar los valores históricos en las zonas antiguas. Luán Investment Corp. v. Román, supra, págs. 548-549.
Por otro lado, la Junta tiene la facultad de preparar y adoptar los mapas de zonificación de Puerto Rico por iniciativa propia. Además, puede considerar cambios a la zonificación de algún sector o solar en específico por petición de alguna persona, funcionario u organismo. Sec. 4.04 del Reglamento de Planificación Núm. 4, supra.
Cuando la Junta ha denegado una petición de rezonificación, pero se solicita nuevamente un cambio en la zonificación del mismo predio, el solicitante debe demostrar que han ocurrido cambios en el área circundante al solar que ameriten una nueva zonificación. La determinación de la existencia de estos cambios es un criterio de mucho peso e importancia. La Junta debe seguir este análisis para evitar que los dueños de las propiedades cercanas se afecten directamente por el deseo personal de otro vecino. Por ello, dicha agencia exige que todo proponente de una solicitud de esta naturaleza demuestre por escrito que ha habido cambios sustanciales en las condiciones del área o sector donde radica la petición de cambio, en comparación a las existentes cuando se tomó dicho acuerdo, que amerite que la Junta considere nuevamente la solicitud. De no demostrarse los cambios en las condiciones, la Junta podrá actuar sobre la solicitud, denegándola sin que sea objeto de una nueva vista pública See. 4.06(4) del Reglamento de Planificación Núm. 4, supra, pág. 38.
Nuestra realidad social obliga al Estado a salvaguardar la zonificaciones existentes. Para lograr enmendar y alterar éstas, es necesario que el propósito de la zonificación original del área sea incompatible con el ambiente prevaleciente. De entender la Junta que las circunstancias del área donde ubica el solar que habrá de ser rezonificado han cambiado con el tiempo, ésta puede optar por permitir la enmienda en el mapa de zonificación. De no ser así, la Junta debe mantener la zonificación original.
La autoridad para zonificar y rezonificar conferida a la Junta de Planificación forma parte del poder de *775 reglamentación que le fue delegado por la Asamblea Legislativa. Las actuaciones realizadas ai amparo de esta autoridad constituyen actos de naturaleza cuasi legislativa, 23 L.P.R.A. sec. 63(d), ya que "no adjudica[n] una controversia, sino que establece[n] una reglamentación". Luán Investment Corp. v. Román, 125 D.P.R. 533, 545 (1990).
Al respecto, el Tribunal Supremo de Puerto Rico señaló en Luán Investment Corp. v. Román, Id., que:
“fijos mapas de zonificación y sus enmiendas representan la forma visual y práctica de instrumentar los reglamentos de zonificación y sus enmiendas. Su aprobación y enmiendas no son actos de naturaleza adjudicativa, dirigidos a resolver una controversia en particular entre una o más personas, sino que son actos producto de los instrumentos con los cuales el Estado ha provisto a la Junta para reglamentar el uso de la tierra en Puerto Rico, de manera que se logre un desarrollo integral y balanceado de nuestra sociedad. ” Id., a la pág. 547.
La Ley Orgánica de la Junta de Planificación contempla la revisión judicial para este tipo de actuaciones cuasi legislativas. 23 L.P.R.A. sec. 63(d). En este contexto, aunque la Junta de Planificación posee un amplio margen de discreción para implantar la política pública estatal sobre zonificación, y como entidad administrativa, sus actuaciones poseen una presunción de validez y regularidad, Marketing & Brokerage Specialties, Inc. v. Departamento de Agricultura, 118 D.P.R. 319 (1987), compete a los tribunales examinar, fen última instancia, la validez jurídica de sus actuaciones.
Para que el ejercicio del poder de reglamentar el uso de los terrenos por parte de la Junta de Planificación sea válidamente ejercido y no entre en conflicto con la disposición constitucional que reconoce como un derecho fundamental el derecho al disfrute de la propiedad, Constitución de P.R., Art. II, Sec. 7, su ejercicio debe estar razonablemente relacionado a un interés gubernamental legítimo, como lo es la protección de la seguridad pública, la salud, la moralidad o el bienestar general. Además, debe estar enmarcado en el ámbito de los poderes delegados por la Legislatura y debe ser consecuente con las disposiciones de los reglamentos que rigen en materia de zonificación y planificación en nuestro país.
Por ello, como medida fiscalizadora, se ha sostenido que para evaluar si la Junta de Planificación se ha extralimitado en el ejercicio de sus poderes, los tribunales deberán evaluar los siguientes factores: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse la reglamentación se cumplió con las normas procesales; y (5) si la reglamentación es arbitraria o caprichosa. Luán Investment Corp. v. Román, supra, a la pág. 550.
Compete a la parte que impugna una determinación de la Junta de Planificación demostrar su invalidez. Por lo tanto, en el presente caso compete a la Asociación de Residentes demostrar que la actuación de la Junta de Planificación fue arbitraria y caprichosa, por apartarse de las normas antes expuestas.
III
La Asociación de Residentes plantea que la rezonificación aprobada por la Junta de Planificación viola el Plan de Usos de Terreno de la Región Metropolitana de 1982 y las normas establecidas por el Tribunal Supremo al permitir rezonificaciones aisladas “spot zoning” en la Urbanización Altamira.
La Ley Orgánica de la Junta de Planificación señala que ‘fijos Planes de Usos de Terrenos, así como la disponibilidad y programación de la infraestructura física y social, será la base para la preparación y revisión de los mapas de zonificación”. 23 L.P.R.A. sec. 62(m). Más adelante enfatiza que toda obra o proyecto que sea realizado por cualquier persona o entidad “deberá estar de acuerdo con las recomendaciones de los Planes de Usos de Terreno”. Id. En vista de lo anterior, la Junta de Planificación adoptó, y el entonces Gobernador de *776 Puerto Rico aprobó el 31 de marzo de 1982, el Plan de Uso de Terrenos. El Plan delimita el área que abarca y reconoce su carácter flexible y dinámico de forma tal que se facilite la toma de decisiones en torno a la planificación del país, sin impedir el desarrollo ordenado. Plan de Usos de Terrenos de la Región Metropolitana de San Juan del 31 de marzo de 1982, página 4.
El Plan identifica seis categorías de problemas que afectan la región y los clasifica por aquéllos que son generales a toda el área y aquéllos que afectan zonas específicas. Al hacerlo, establece metas, objetivos y estrategias que viabilicen la solución de los problemas planteados. 
En el caso que nos ocupa, las disposiciones que la Asociación de Residentes argumenta que fueron violadas están ubicadas en la sección que discute el problema de especialización de los usos de terrenos. Esta sección establece como metas “[pjropiciar la diversificación de actividades y usos compatibles y complementarios en aquellas áreas que reúnan los requisitos y promover mayor vitalidad a sitios estratégicos en espacio y tiempo". Más adelante identifica como objetivo “[Restringir la diversificación de usos en áreas cuyo carácter se desea mantener”, y define como estrategias lo siguiente:
“6.03 Evitar la introducción de nuevos distritos de zonificación aislados (spot zoning) en áreas donde predomina solamente otro uso.” (Énfasis suplido) (Subrayado en el original). 
En este sentido, se ha establecido que el Estado debe salvaguardar- las zonificaciones existentes y que para lograr alterar o enmendar las mismas es necesario que el propósito de la zonificación original del área sea incompatible con el ambiente prevaleciente. No obstante, aunque el Estado debe salvaguardar las zonificaciones existentes, si la Junta de Planificación estima que las circunstancias de cierta zona han cambiado, puede permitir una enmienda al mapa de zonificación. Montoto v. Lorie, supra.
El término rezonificación aislada o “spot zoning” es una enmienda a una zonificación que no es cónsona con los principios o esquemas generales de planificación. De ordinario, se trata de enmiendas que son el resultado de esfuerzos encaminados a favorecer intereses particulares sin brindarle la debida atención a los derechos de los propietarios de solares adyacentes y al bienestar general de la comunidad. Por considerarse como la antítesis de la zonificación ordenada, los tribunales no favorecen la zonificación aislada. Asoc. Res. Park Side v. J. P., supra.
La rezonificación aislada, por definición, no guarda relación alguna con la salud, seguridad o bienestar general de la ciudadanía. Se trata de una actuación contraria a los mejores intereses de la comunidad que se aparta de los planes de desarrollo de un área geográfica. La rezonificación aislada crea un “efecto de dominó” ante la posibilidad de que un solar o propiedad tenga que ser rezonificado por el hecho de que una propiedad o solar adyacente ya lo fue. De ahí que la zonificación aislada sea la antítesis de la planificación ordenada, pues dramatiza los peligros que acarrea para la planificación ordenada de los recursos de terrenos. Asoc. Res. Park Side, Inc. v. J.P., supra.
Bajo el ordenamiento de zonificación de Puerto Rico, ocurre una rezonificación aislada o “spot zoning” cuando un mapa de zonificación es enmendado mediante la rezonificación de uno o varios solares o lotes autorizando en ellos un uso diferente al establecido originalmente que resulta incongruente o carente de armonía con los usos de los terrenos de las áreas adyacentes. Esta incongruencia, de ordinario, beneficia a un grupo reducido de propietarios en perjuicio de los mejores intereses de la comunidad. Asoc. Res. Park Side, Inc. v. J. P., supra.
Sin embargo, no toda rezonificación de un solar o propiedad que pudiera apartarse de los usos que han prevalecido en un área constituye una rezonificación aislada y, por tanto, una actuación inválida. Para hacer esta determinación es necesario examinar las características precisas del área rezonificada a la luz del ordenamiento *777 que rige en materia de zonificación y examinar si la rezonificación es arbitraria o caprichosa por apartarse significativamente de los usos prevalecientes en el área, afectando adversamente los mejores intereses de la comunidad. Asoc. Res. Park Side, Inc. v. J.P., supra.
Al examinar si una rezonificación constituye una zonificación aislada o “spot zoning” y para calificarla de inválida, los tribunales deben considerar varios criterios: (1) si el uso permitido por la rezonificación es muy diferente al uso prevaleciente en el área, esto es, si la rezonificación crea un uso incompatible en un área, (2) si el cambio autorizado a un tipo de distrito menos restrictivo no fue realizado para el beneficio de la comunidad, sino simplemente para favorecer a una persona o desarrollador en particular o, en la alternativa, para relevar a un pequeño sector de las restricciones que generalmente aplican a toda el área, (3) si el área involucrada en la rezonificación es particularmente pequeña, por ejemplo, si involucra sólo un lote o muy pocos, lo que crea escepticismo judicial. Asoc. Res. Park Side, Inc. v. J.P., supra.
La determinación judicial de la validez de una rezonificación, por razón de constituir una zonificación aislada o “spot zoning”, debe hacerse caso a caso examinando las particularidades de la zona en cuestión y los Planes de Usos de Terrenos desarrollados para el área, con miras a determinar si la rezonificación es contraria al ordenamiento jurídico de zonificación. Asoc. Res. Park Side, Inc. v. J.P., supra.
Es norma básica que quien solicita el cambio de la zonificación existente, tiene que demostrar a la Junta qué cambios ha sufrido el área circundante al solar en cuestión que amerite un cambio en la zonificación del mismo. Con lo anterior en mente, procedemos a evaluar si tal y como afirma la Asociación de Residentes la rezonificación constituye una rezonificación aislada.
El área que comprende la Urbanización Altamira está zonificada principalmente como Distrito R-3, aunque con el pasar del tiempo la misma ha ido transformándose en zona comercial, atentando contra la seguridad y tranquilidad de los residentes. Del Mapa de Calificación de Suelo del Municipio Autónomo de San Juan notamos que los solares que colindan por la parte trasera de los solares en controversia tienen una clasificación R-3. Todos estos solares poseen una cabida similar. En el área circundante existen algunos solares zonificados como Distrito Comercial Local (C-l) y Comercial Liviano (CL). Sin embargo, según el mapa de zonificación, el acceso a esa área es independiente del acceso al resto de la Urbanización Altamira. Es decir, para llegar a estas áreas clasificadas como Distrito C-l y CL no es necesario transcurrir por la Calle Aldebarán y ni siquiera es necesario entrar a la Urbanización. Si bien es cierto que la Calle Aldebarán se halla paralela al Expreso Martínez Nadal, dicho expreso discurre de manera independiente y no existe un acceso directo desde el mencionado Expreso hasta la Calle Aldebarán. De este modo, esta área y la Urbanización Altamira se encuentran separadas por la organización urbana del área. Con excepción de esos solares que están ubicados en la Calle Perseo, que discurre por el extremo noroeste de la urbanización, los demás solares con esta vía de acceso común ostentan una clasificación de Distrito R-3. 
Por otra parte, no creemos que la rezonificación solicitada propenda al bienestar general de la comunidad. La Asociación de Residentes señala que durante años la Urbanización Altamira se ha caracterizado por ser una zona residencial tranquila y segura. La Junta de Planificación otorgó permisos para establecer negocios u oficinas en la calle Aldebarán aun cuando no cumplen con los reglamentos de zonificación del Municipio de San Juan. Los vecinos de Altamira radicaron querellas ante la Junta de Planificación y ARPE desde el 1993. Como respuesta a sus reclamos, el Municipio aprobó la Ordenanza Número 3 serie 2003-2004 de 5 de agosto de 2003 “para reafirmar la posición del Municipio de San Juan en cuanto a la utilización de lotes comerciales a lo largo de la calle marginal conocida como Calle Aldebarán de la Urbanización Altamira de San Juan; instar a la Junta de Planificación del Gobierno de Puerto Rico a resolver la petición de cambio de zonificación a ellos sometida por los comerciantes de la referida zona de acuerdo a la posición del Municipio protegiendo así el derecho de sus residentes a mantener el sector como uno de uso residencial exclusivamente”. Así también se le ha ordenado a la Comisión de Gobierno y Municipio de San Juan realizar una investigación sobre los *778 permisos que la Junta de Planificación está otorgando a personas para ubicar sus negocios en la calle Aldebarán en la Urbanización Altamira violando las ordenanzas del Municipio de San Juan. 
Además, de los autos se desprende que cualquier rezonificación en la calle Aldebarán afectaría adversamente el tránsito vehicular en las vías residenciales adyacentes, ya que la Calle Aldebarán es una calle sin salida, con tránsito en ambas direcciones y cuya única salida es por la Calle Perseo, la cual ya sufre de exceso de tráfico. También, sostienen que el permitir el cambio de zonificación de un sector que originalmente se creó para servir familias a uno comercial afectaría la distribución de servicios públicos tales como agua, luz, teléfono y recogido de basura. Asimismo, el hecho- de que las propiedades quedasen abandonadas luego de horas laborables, atrayendo así la posibilidad de que merodeadores y criminales rondasen el área. Ciertamente, la Asociación de Residentes ha demostrado los efectos perjudiciales que traería el cambio de zonificación. Por el contrario, los peticionarios que favorecen el cambio de zonificación no demostraron que existiesen condiciones extraordinarias que ameritasen destruir el esquema de zonificación para el sector.
Si aplicamos los criterios establecidos en Asoc. Res. Park Side, Inc. v. J.P., supra, para examinar' si una rezonificación constituye una zonificación aislada o “spot zoning” tenemos que concluir que el uso permitido por la rezonificación es muy diferente al uso prevaleciente en el área. De una mirada al mapa de zonificación de la Urbanización Altamira se desprende que el área es en su mayoría residencial. El aprobar la rezonificación de un área R-3 a una CO-1, sin duda altera el uso prevaleciente en el área de la Urbanización Altamira, la cual es predominantemente residencial. De acuerdo con las ponencias de los residentes de la Urbanización Altamira, y de la Asociación de Residentes del área Metropolitana, el cambio autorizado no fue realizado para el beneficio de la comunidad, sino simplemente para favorecer a un pequeño sector. Finalmente, el área involucrada en la rezonificación es particularmente pequeña. Siendo la Calle Aldebarán una marginal comprendida dentro de la Urbanización Altamira, debemos mirar el cambio de zonificación con escepticismo judicial. 
La evidencia tiende a demostrar que la rezonificación es contraria a la armonía vecinal del área y que en lugar de beneficiar a la comunidad tan sólo beneficia a los propietarios de los solares rezonificados. Aprobar una clasificación distinta a la de R-3 implica promover un tránsito vehicular mayor en una zona descrita en los mapas de zonificación como un área residencial. Ello representa un aumento en el número de vehículos que a diario se estacionan en el área y conlleva un aumento en el ruido que se produce en la misma, todo ello en detrimento de la mejor convivencia vecinal.
Igualmente, nos llama la atención que la Junta de Planificación denegó en varias ocasiones solicitudes de rezonificación similares a las que nos ocupan y que fueron aprobadas en el presente caso. No encontramos diferencias notables entre esas denegatorias de rezonificación y la aprobación aquí impugnada. La aprobación del presente caso es claramente incongruente con la armonía regional. El propósito primordial del Distrito R-3 es establecer el uso residencial, mientras el propósito primordial del Distrito CO-1 es establecer el uso comercial para el establecimiento de oficinas. Ambas resultan incompatibles entre sí y resultan en un detrimento a la mejor convivencia vecinal.
Nos vemos compelidos a concluir que el cambio de zonificación constituyó una rezonificación aislada que es contraria a los Planes de Usos de Terrenos y constituye una actuación arbitraria y caprichosa que los tribunales debemos desalentar y desautorizar. Si bien es cierto que las agencias administrativas cuentan con cierto grado de flexibilidad dado a su conocimiento especializado, no es menos cierto que éstas no pueden convertirse en fuente de arbitrariedad o abuso de discreción.
IV
La Asociación de Residentes señala que erró la Junta de Planificación al aprobar las rezonificaciones comerciales de la Calle Aldebarán a pesar de que la Urbanización Altamira tiene servidumbres en equidad que sólo permiten usos residenciales.
*779 El Tribunal Supremo ha advertido que aunque en ocasiones las servidumbres son compatibles con la zonificación del Estado, su propósito, creación e implantación dependerá de que los dueños de los solares o predios gravados las hagan valer. Reiteradamente se ha resuelto que la mera concesión de un permiso por la Junta de Planificación o por ARPE no tienen el efecto ni el alcance de anular restricciones privadas que resulten incompatibles con el permiso concedido. Asociación Pro Bienestar v. Banco Santander, 157 D.P.R. 521 (2002). Del mismo modo, una “rezonificación concedida no tiene el efecto de anular las restricciones privadas que resulten incompatibles con la misma”. Luán Investment Corp v. Román, 125 D.P.R. 533, 551 (1990). En tales casos, los beneficiarios de la restricción, con el propósito de hacer valer sus derechos, pueden recurrir a una acción independiente, incluida la del injunction ordinario, para que los reclamos de todas las partes acreedoras al derecho surgido de la servidumbre en equidad sean adecuadamente atendidos. Asociación Pro Bienestar v. Banco Santander, supra.
De la Comparecencia en Oposición a Cambios de Zonificación ante la Honorable Junta de Planificación que hiciera la Asociación de Residentes de Altamira, surge que la Urbanización Altamira cuenta desde su origen con unas condiciones restrictivas conocidas como servidumbres en equidad, registradas mediante escritura pública desde el año 1956. En la escritura matriz se estableció que todos los lotes, con excepción de los 157, 158, 159, 160, 161, 162, 163, 164, 165 y 166, los cuales pueden ser utilizados para propósitos comerciales, serán para uso residencial exclusivamente. 
Aun cuando la decisión del organismo administrativo recibirá la debida deferencia, en el balance de intereses y factores involucrados para determinar cuál reglamentación va a prevalecer, -la del Estado o la privada-, tiene gran peso si el propietario que pretende utilizar su predio para fines vedados por la restricción privada tenía o no conocimiento de las limitaciones por ésta impuesta. Si el propietario tiene conocimiento de tales limitaciones, bajo tales condiciones le está vedado solicitar y que se le conceda un remedio administrativo vía variación o excepción. Ello, en vista de que al comprar la propiedad éste adquirió conocimiento de las limitaciones a las que estaba sujeta. No debe premiarse la utilización para fines contrarios a tales limitaciones. La persona que así actúe se autoinflige el perjuicio que le cause el no poder utilizar su propiedad para los fines pretendidos. Asociación de Bienestar v. Banco Santander, supra.
El claro propósito de la servidumbre en equidad de la Urbanización Altamira es lograr que los futuros adquirentes de dicha urbanización pudiesen establecer allí su domicilio sin los inconvenientes que en ocasiones conlleva la operación de negocios dentro de la Urbanización. Según resolviera el Tribunal Supremo de Puerto Rico en el caso de Residentes Parkville v. Díaz, 159 D.P.R. 374 (2003), en controversias entre servidumbres en equidad y reglamentos de agencias gubernamentales, prevalece el convenio alcanzado por las partes a través de la servidumbre en equidad sobre el permiso otorgado por la agencia. En mérito de lo antes expuesto, resolvemos que la autorización concedida por la Junta de Planificación no derogó en modo alguno las condiciones restrictivas.
V
La Asociación de Residentes nos señala además que la rezonificación otorgada es contraria al Plan de Ordenación Territorial del Municipio de San Juan y a las Ordenanzas Núm. 3 de 5 de agosto de 2003 y la Ordenanza Número 50 de 24 de febrero de 2004 del Municipio de San Juan. Según el Plan de Ordenación Territorial de San Juan firmado el 13 de marzo de 2003, el Municipio de San Juan ratificó y confirmó la zonificación residencial de las urbanizaciones residenciales de la ciudad. Así, la oficina de Planificación y Ordenación Territorial del Municipio de San Juan dispuso mediante Resolución MSJ-OT-2004-1 que no le reconocería validez a cambios de zonificación aprobados a partir del 13 de marzo de 2003 que no estuviesen de conformidad con el Plan de Ordenación Territorial y no se autorizará la intervención sobre las aceras para crear-rampas de acceso en los patios delanteros de propiedades para proveer estacionamiento ni la salida en retroceso desde las mismas.
El 5 de agosto de 2003, se aprobó la Ordenanza Número 3, Serie 2003-2004 “para reafirmar la posición del *780 Municipio de San Juan en cuanto a la utilización de lotes comerciales a lo largo de la calle marginal conocida como Calle Aldebarán de la Urbanización Altamira de San Juan; e instar a la Junta de Planificación del Gobierno de Puerto Rico a resolver la petición de cambio de zonificación a ellos sometida por los comerciantes de la referida zona de acuerdo a la posición del Municipio protegiendo así el derecho de sus residentes a mantener el sector como uno de uso residencial exclusivamente”. 
Con el mismo interés, posteriormente el 24 de febrero de 2004, se aprobó la Ordenanza Número 50 Serie 2003-2004. En la misma reafirmó la posición en cuanto a la utilización de solares residenciales para usos comerciales a lo largo de las calles de urbanizaciones residenciales de dicho Municipio y se resistió a la solicitud de cambio de zonificación o cambios de uso en las referidas zonas protegiendo así el derecho de los residentes de mantener dichos sectores como de uso residencial exclusivamente. Así también instó a la Junta de Planificación a resolver las peticiones de cambio de zonificación que le fueron sometidas por los comerciantes de las referidas zonas y a requerir para una variación el endoso del 75% de los propietarios dentro de los 100 metros de la parcela objeto de la petición. De esta manera pretende proteger el derecho de sus residentes a mantener estos sectores para uso exclusivamente residencial.
El hecho de que tanto la ordenanza número 3 así como la ordenanza número 50 y el Plan de Ordenación Territorial del Municipio de San Juan defienden el carácter residencial de la Urbanización Altamira, refuerza nuestra conclusión sobre la incompatibilidad de la rezonificación aprobada con los usos permitidos en el área. Por ende, debe sostenerse el carácter residencial de la urbanización.
YI
La Asociación de Residentes de Altamira argumenta además que la Junta de Planificación incumplió con la sección 4.06 del Reglamento de Zonificación, la cual requiere que la parte promovente de una rezonificación someta a la Junta un Memorial Explicativo que contenga información esencial respecto a la naturaleza del sector objeto de la solicitud de rezonificación.
La Sección 4.06(5) del Reglamento de Zonificación nos habla acerca del Memorial Explicativo como uno de los requisitos necesarios para cambios de zonificación. Nos dice que se deberá dar:
“una descripción clara y completa del sector, su localización, características sobresalientes, importancia agrícola, histórica, escénica, cultural o natural, las razones que apoyan la solicitud del cambio de zonificación y justificación del beneficio que derivaría la comunidad o el sector con respecto al mismo. ” (Énfasis Suplido).
Sobre la importancia del Memorial Explicativo, nuestro más Alto Foro ha dispuesto lo siguiente:
“El Reglamento de Zonificación revela claramente la naturaleza del memorial explicativo y su rol en el esquema de revisión de las zonificaciones promulgadas por la Junta de Planificación. Se trata de un documento de trabajo que le permite a la Junta conocer la naturaleza de la rezonificación solicitada, las condiciones sociales, culturales e históricas del área que se vería afectada por la rezonificación y la deseabilidad de realizar el cambio a la luz del beneficio que derivaría la comunidad o el sector, de aprobarse el cambio. Ningún otro documento requerido por el Reglamento de Zonificación en esta etapa le permite a la Junta de Planificación obtener esta información; la cual, indudablemente, le permite colocarse en condiciones óptimas para evaluar la conveniencia de realizar la rezonificación. De ahí se deriva la importancia y centralidad del memorial explicativo como documento descriptivo de la realidad imperante en el sector que es objeto de la solicitud de rezonificación. ” Asoc. Res. Park Side, Inc. v. J.P. supra, página 298.
La Asociación de Residentes de Altamira advierte que varias de las peticiones no incluyeron sus memoriales explicativos tal y como lo requiere la sección 4.06(5) del Reglamento 4. Según nos señala, fueron las siguientes: (1) la petición número 2003-17-0201-JPZ, la cual incluyó memorial explicativo para los solares números 584 y *781 576, mas no así para el solar 598; (2) las peticiones número 2003-17-0148, correspondiente al solar número 634; (3) la petición número 2003-17-0210-JPZ, correspondiente al solar 590; (4) la petición número 2003-17-0211-JPZ correspondiente al solar 588; y la 2004-17-0206-JPZ correspondiente al solar 626.
No obstante, la petición 2003-17-0201-JPZ, originalmente solicitaba la rezonificación de la propiedad 584 para la cual sí se presentó Memorial Explicativo; sin embargo, el 12 de abril de 2005 se notificó una resolución en la que la Junta de Planificación aclara que el número correcto de los predios que solicitan rezonificación dentro de dicha petición son el 584, 576 y 598. En dicha resolución se certificó haber notificado a las partes interesadas. Conforme a ello se dio a dichas partes por notificadas. 
No obstante, los memoriales explicativos sometidos para las peticiones número, 2003-17-0177-JPZ; 2003-17-0178-JPZ; 2003-17-0180-JPZ; 2003-17-0181-JPZ; 2003-17-0182-JPZ; 2003-17-0200-JPZ contienen sólo la siguiente información:
“Se solicita de esta Honorable Junta que autorice un cambio de zonificación de la propiedad que ubica en la Calle Aldebarán [# correspondiente al solar de la petición/, Altamira, San Juan, Puerto Rico.

Actualmente, el predio ostenta una zonificación R-3. El cambio solicitado es a un Distrito CO-1.

En dicha propiedad se opera íoficinas de ingeniería, administrativas o profesionalesl.

El horario de operación será de [...].

El uso cuenta con [...] empleados.

La propiedad tiene disponible [...] estacionamientos. ” 

En dicho memorial, se expone el hecho de que el área de Altamira está clasificada como “zona de redesarrollo”, pero omiten explicar el significado de dicha clasificación. Como parte de su descripción del área afectada por la rezonificación, sostienen que el Plan de Usos de Terrenos del Municipio de San Juan (PUT-RMSJ) indica que “en ésta área ha habido una transformación de los usos de terrenos. Indica también que el área concernida en las últimas décadas, estos sectores han pasado de una posición periférica a una más céntrica. Las avenidas y las calles tales como Roosevelt y la Piñero son recorridas por un gran número de vehículos diariamente. El volumen de tránsito impone altos niveles de ruido, limita la privacidad y ocasiona un aumento en la emisión de gases a la atmósfera que hace de los lugares a ambos lados de las avenidas sitios poco agradables para vivir en viviendas terreras convencionales”.
Finalmente señalan en sus Memoriales Explicativos que “es un hecho indiscutible que la construcción del Expreso Martínez Nadal ha propiciado que las propiedades en la Calle Aldebarán queden expuestas directamente a las inconveniencias que genera el tránsito vehicular del mismo así como lo están aquellas propiedades a lo largo de la Avenida Roosevelt, Piñero, Campo Rico y Monserrate que ha obligado a la Junta de Planificación a reenfocar su estrategia para el desarrollo de estas áreas que ubicadas en la periferia mantenían una posición mucho más céntricas lo cual condujo a los cambios de zonificación en el sector”. Así también sostienen que en la Calle Aldebarán sólo 8 propiedades se dedican a uso residencial.
A la luz de lo anterior, y debido a la vaga descripción del área en cuestión y la omisión de mencionar los beneficios que derivaría la comunidad afectada, somos del criterio de que los Memoriales Explicativos no cumplen cabalmente con la normativa vigente de manera tal que nos ubiquen en posición hábil para concebir el impacto de la rezonificación propuesta. Estimamos que esta omisión fue significativa y que la Junta de Planificación debió rechazar de plano la solicitud, toda vez que no se satisfizo lo dispuesto en la propia sección *782 4.06 del Reglamento. Esta sección condiciona la otorgación de una dispensa del cumplimiento de cualquiera de los requisitos establecidos en ella por parte de la Junta, a que la parte promovente demuestre satisfactoriamente que no puede cumplirlos. Indica, además, la sección que "[e]n tal circunstancia, el peticionario deberá solicitar la dispensa mediante carta que fundamente la petición de dispensa". Reglamento de Zonificación, Sección 4.06. En el expediente no hemos encontrado ninguna solicitud escrita al respecto, ni ninguna razón que justifique dicho incumplimiento.
VII
Otro señalamiento de la Asociación de Residentes de Altamira es que las propiedades objeto de la solicitudes de rezonificación no cuentan con estacionamientos funcionales ni con el número requerido por el Reglamento 4 de Zonificación en las secciones 74.02 y 74.03(2) y por la sección 15.02(a) del Reglamento de Ordenación Territorial del Municipio de San Juan (ROT-SJ). Estos requieren que las áreas de estacionamientos de vehículos se diseñen en forma funcional para que cualquier vehículo pueda moverse sin que se vea impedido de hacerlo por otros vehículos estacionados, ni obligado a entrar en tránsito en retroceso.
De acuerdo con la sección 74.03(2) del Reglamento de Zonificación antes citado, las estructuras en cuestión deben proveer un espacio de estacionamiento “por cada veinticinco (25) metros cuadrados, o parte de éstos, de área bruta de piso dedicado a tales fines'’. Los recurridos alegan que no tenían que cumplir en la etapa de solicitud de rezonificación “con las exigencias correspondientes sobre las condiciones, modo y manera en que se habrá de operar el uso y requerimiento de estacionamiento que se establecen en los reglamentos aplicables por entender que éste es parte del procedimiento a llevarse a cabo en la fase operacional”. No tienen razón.
Cuando una agencia promulga un reglamento, limita su discreción, por lo que viene obligada a cumplir y aplicar sus normas reglamentarias. Hernández v. Centro Unido de Detallistas, 168 D.P.R. _, 2006 J.T.S. 140; Comité de Vecinos v. Junta de Planificación, 147 D.P.R. 750. El Reglamento de Zonificación en su sección 74.03 (2) requiere un mínimo de estacionamientos disponibles como requisito procesal para otorgar la rezonificación de CO-1. Nuestro Tribunal Supremo dispuso en el caso de Asoc. Res. Park Side v. J.P., supra, que estas disposiciones se enmarcan en la política pública de evitar la rezonificación de zonas de forma desordenada y sin que posean las condiciones necesarias para satisfacer las necesidades del nuevo tipo de zonificación.
Como parte del análisis cuyo objetivo era verificar la validez de una rezonificación hecha por la Junta de Planificación, nuestro más alto foro, en el caso normativo de Asoc. Res. Park Side v. J.P., supra, entró de lleno a analizar la sección 74 del Reglamento de Zonificación como requisito procesal para otorgar la rezonificación de un Distrito CO-1. Allí, la Asociación de Residentes planteó que la solicitud de rezonificación de un Distrito R-3 a uno CO-1 debía ser rechazada, puesto que el solar en cuestión no contaba con el número de estacionamientos requeridos por el Reglamento de Zonificación. Por la similitud entre ambas situaciones de hechos, podemos inferir que es al momento de solicitar la rezonificación que se debe cumplir con los requisitos procesales que exige la ley, a no ser que la agencia a cargo bajo su discreción lo exima de dicho cumplimiento.
Respecto al área de estacionamiento requerida por el Reglamento, cada propiedad debe cumplir con el mínimo establecido por éste, una vez se calcule siguiendo los parámetros reglamentarios de acuerdo al área destinada a uso comercial de cada establecimiento en particular.
Las propiedades objeto de cada una de las solicitudes de rezonificación de epígrafe cuentan con solares de 525 metros cuadrados cada una. En ninguno de los documentos sometidos con las peticiones se indica cuál será el área bruta dedicada al uso comercial dedicado. Esta falta de información impide verificar si en efecto las peticiones satisfacen el requisito de las secciones 74.02 y 74.03 antes mencionadas.
No obstante, no surge del expediente que la Junta de Planificación haya dispensado a los recurridos del cumplimiento de este requisito ni que existan razones para que dicha entidad pudiera haberlo hecho.
*783 VIII
La Asociación de Residentes de Altamira también cuestiona que la Junta de Planificación aprobase la rezonificación del predio ubicado en la Calle Aldebarán Núm. 598 sin haber notificado la intención de solicitar el cambio de zonificación de dicha propiedad.
En el caso de autos se aprobó el cambio de clasificación de un distrito residencial general R-3 a un Distrito CO-1. Cuando la Junta altera la zonificación existente y convierte los solares en un distrito comercial está permitiendo el inevitable crecimiento de un área comercial dentro de la Urbanización Altamira. Esto hace indispensable la adecuada notificación a todas las partes cuyos intereses puedan quedar afectados.
En la sección 4.06 del Reglamento de Zonificación se establece que la Junta podrá considerar el rezonificar a determinado sector o solar bajo uno de los distritos de zonificación de este Reglamento cuando la persona, agencia o entidad peticionaria cumpla con los siguientes requisitos:

“(1) Llene en todas sus partes los formularios correspondientes.

(2) Evidencie haber notificado de la intención de radicar la solicitud de cambio de zonificación a los dueños de las propiedades conforme se dispone a continuación:

a. Todos los dueños de aquellas propiedades que radiquen dentro de una distancia de sesenta (60) metros del área propuesta a rezonificarse medidos desde los límites de la propiedad objeto de la petición.

b. Deberá incluir no menos de veinte (20) dueños de propiedades. Cuando dentro de la distancia indicada en el apartado (a) anterior no existieren veinte (20) propiedades, se ampliará la misma de forma uniforme incluyendo todos los propietarios que ubiquen dentro de la nueva distancia ampliada.

c. La notificación se hará mediante correo certificado con acuse de recibo, pagado por el peticionario al momento de radicar se podrá considerar como evidencia suficiente el recibo de correo cancelando los mismos. No obstante, los acuses de recibo deberán obrar en el expediente del caso al menos cinco (5) días antes de la fecha pautada para la vista pública. De así no hacerse, la Junta podrá tomar la acción que corresponda en derecho. En casos excepcionales y de no poder cumplir con lo antes expuesto, la notificación podrá realizarse personalmente. En cuyo caso, al momento de radicar, se presentará evidencia de así haberse hecho, la cual incluirá la firma del propietario o su representante, nombre en letra de molde, dirección, así como la intención del cambio.

[...]”. (Énfasis Suplido)
Así también, la jurisprudencia reitera lo anterior cuando indica que “en cuanto al trámite de notificación, cuando se solicita una rezonificación, se requiere que la misma se realice a los propietarios colindantes dentro de un área radial de 60 metros”. Montoto v. Lorie, supra.
Según el citado caso, el solicitante debe entregarle a la Junta las copias de los acuses de recibo de las notificaciones efectuadas acompañadas a su vez de una declaración jurada a tales efectos. Además, el solicitante tiene el deber de brindarle a la Junta los nombres de las personas notificadas, las direcciones correctas de las mismas y los números de propiedad del Registro de Propiedad Tributables (Catastros) del Departamento de Hacienda (hoy Centro de Recaudación de Ingresos Municipales, C.R.I.M.) de sus propiedades.
La recurrente, Asociación de Residentes de Altamira, alega que en la solicitud de cambio de zonificación 2003-17-0201-JPZ que incluye la propiedad ubicada en Aldebarán 598 no se cumplió con el requisito de notificar a los dueños de la propiedades dentro del radio de 60 metros, cuestionando así la jurisdicción de la Junta de *784 Planificación en el asunto. Señalan además que no se le notificó la fecha de la vista pública y que no surgía de la Agenda de Vistas Públicas del 28 de abril de 2003 la solicitud de cambiar la zonificación de dicha propiedad. No obstante, la Junta de Planificación decidió incluir dicha propiedad en los procedimientos de vistas publicas así como recibir prueba sobre la misma violando el debido proceso de ley de los dueños de propiedades que ubican dentro del radio de 60 metros del número 598 de la Calle Aldebarán. Alegan que dicha falta de notificación hace nula la aprobación de la solicitud de rezonificación por falta de jurisdicción.
Por su paite, en su escrito de oposición, los recurridos sostienen que la propiedad sita en el Número 598 de la Calle Aldebarán está en conjunto con las propiedades sitas en el número 584 y 576 las cuales conforman la solicitud 2003-17-0201-JPZ. El día de la celebración de la vista surgió el tema sobre la falta de inclusión de la propiedad 576 y 598 de la Calle Aldebarán en la Agenda para el día. A esos efectos, el 8 de mayo de 2003 se radicaron dos mociones informativas ante la Junta de Planificación. La primera recogía lo allí acontecido y la segunda notificaba que estaban cumpliendo con el requisito de notificar la petición del cambio de zonificación dentro del término de diez (10) días de la vista pública y que de acuerdo con lo allí expuesto estaban sometiendo los acuses de recibo. Con ello, se acreditó el cumplimiento con el requisito de la sección 4.06.
Reiteramos que la Junta tiene el deber de velar que los requisitos de notificación establecidos en su reglamento sean cumplidos estrictamente. Véase Cotto v. Departamento de Educación, 138 D.P.R. 658 (1995).
IX
Además de los problemas sustantivos encontrados, existen varios defectos procesales. Se nos señala que la Junta de Planificación no preparó los informes requeridos por la sección 2.3 de la Ley de Procedimiento Administrativo Uniforme (LPAU). Dicha sección dispone que el funcionario que presida una vista pública en un proceso de reglamentación “preparará un informe para la consideración de la agencia, en el cual se resuman los comentarios orales que se expongan durante la vista”. 3 L.P.R.A. 2123. Este infoime debe estar presente en el record administrativo. El no preparar el informe requerido es causa suficiente para que el tribunal revoque dichas enmiendas. Así se estableció en el caso Asociación de Farmacias v. Departamento de Salud, 156 D.P.R. 105 (2002).

“Además, el requisito de que se prepare un informe sobre la vista pública responde a otro importante propósito. La LPAU requiere que la agencia analice todas las sugerencias de las partes interesadas que participen en el proceso de reglamentación. 3 LPRA §2124. La agencia tomará en consideración además de los comentarios escritos y orales que le han sometido su experiencia, competencia, técnica, conocimiento especializado, discreción y juicio. Mediante la exigencia de que se prepare un informe sobre la vista publica, la LPAU asegura que la participación en dicha vista de todas las partes interesadas sea realmente efectiva. Al preparar el informe, el funcionario que presidió la vista tiene que enfrentar y considerar todos los argumentos y comentarios que hayan hecho todas las partes. De esta manera, pues, se garantiza que dichos comentarios sean escuchados con detenimiento. Como en el caso de autos no se preparó dicho informe, no podemos estar seguros que lo que se ventiló en la vista pública fue adecuadamente considerado por el Secretario de Salud al promulgar el Reglamento. Al no prepararse el informe, pues, queda en duda si la participación de las partes fue realmente considerada como requiere la ley o si quedó frustrado este genuino e importante propósito de celebrar la vista pública. ”

De un examen de los documentos en autos no pudimos localizar ningún informe de los oficiales examinadores, por lo que es forzoso concluir que la Junta no preparó los mismos. Tal conducta tiene como consecuencia que desconozcamos todos los argumentos de las partes. Este defecto procesal pone en duda si la participación de las partes fue realmente considerada o si quedó frustrado este importante propósito de celebrar la vista pública. Asociación de Farmacias v. Departamento de Salud, 156 D.P.R. 105, 123 (2002).
X
*785 Igualmente, la Asociación nos señala que la Junta de Planificación acogió varias peticiones y autorizó las enmiendas sin que hubiera transcurrido el término de cinco años dispuesto en la sección 7.02(f)(6) del Reglamento de Ordenación Territorial. También señalaron que no se expresaron los cambios sustanciales en las condiciones de los predios que justificasen la radicación de las nuevas solicitudes de rezonificación.
Cuando la Junta ha denegado una petición de rezonificación, pero se solicita nuevamente un cambio en la zonificación del mismo predio, el solicitante debe demostrar que han ocurrido cambios en el área circundante al solar que ameriten una nueva zonificación. La determinación de la existencia de estos cambios es un criterio de mucho peso e importancia. La Junta debe seguir este análisis para evitar que los dueños de las propiedades cercanas se afecten directamente por el deseo personal de otro vecino. Montoto v. Lorie, supra. Por su paite, el Reglamento de Zonificación, supra, establece que en estos casos, no se podrá presentar la nueva petición de rezonificación, en la cual se incluya la misma propiedad, por un término de cinco años. Véase, Reglamento de Zonificación, supra, Sección 4.06(6). Es decir, la reglamentación vigente aplicable, nos requiere esperar un período de cinco años después de una decisión contraria para formalizar una nueva petición.
“Cuando se trate de una solicitud de enmienda a una propiedad para la cual la Junta había denegado anteriormente una solicitud, no se podrá radicar una nueva petición por un término de cinco años en la cual se incluya esta propiedad”. Sec. 7.02(f)(6) del Reglamento del Municipio Autónomo de San Juan.
En el presente caso se violaron las anteriores secciones al radicar varias peticiones de cambios de zonificación en un período menor de cinco años de haberse denegado las solicitudes anteriores para las mismas propiedades. Entre éstas se encuentran las siguientes propiedades:
PETICION DIRECCION NUEVA RADICACION DENEGACION ANTERIOR
2003-17-0150-JPZ Aldebarán 620 24-febrero-2003 26-agosto-1999 (Apéndice 23-A pág. 163)
2003-17-0177-JPZ Aldebarán 580 25-marzo-2003 (Apéndice 27 pág. 174) 6-agosto-1999 (Apéndice 72 pág. 441)
2003-17-0180-JPZ Aldebarán 578 25-marzo-2003 (Apéndice 35 pág. 206) 26-agosto-1999 (Apéndice 38 pág. 225)
2003-17-0181-JPZ Aldebarán 594 25-marzo-2003 (Apéndice 42 pág. 235) 26-agosto-1999 (Apéndice 45 pág. 261)
2003-17-0182-JPZ Aldebarán 592 25-marzo-2003 (Apéndice 49 pág. 272) 26-agosto-1999 (Apéndice 50 pág. 273)
2003-17-0200-JPZ Aldebarán 600 Por el Memorial Explicativo aparenta haberse radicado el 28-febrero-2003. (Apéndice pág. 348) 26-agosto-1999 (Apéndice 63 pág. 378)
2003-17-0200-JPZ Aldebarán 612 Por el Memorial Explicativo aparenta haberse radicado el 28-febrero-2003 (Apéndice pág. 338) 26-agosto-1999 (Apéndice 62 pág. 377)
2003-17-0200-JPZ Aldebarán 604 Por el Memorial Explicativo parenta haberse radicado el 3-marzo-2000 28-febrero-2003 (Apéndice pág. 367)
*786 PETICIÓN DIRECCIÓN NUEVA RADICACIÓN DENEGACIÓN ANTERIOR
2003-17-0201 -JPZ Aldebarán 576 Por el Memorial Explicativo aparenta haberse radicado el 28-febrero-2003. (Apéndice pág. 430) 26-agosto-1999 (Apéndice 72 pág. 441)
2003-17-0211-JPZ Aldebarán 588 4-marzo-2003 (Apéndice 80 pág. 468) 26-agostorl999 (Apéndice 82 pág. 477)
Además de omitir informarle a la Junta de Planificación las denegaciones anteriores que habían sufrido las respectivas propiedades, tampoco se informó que dichas denegatorias habían tenido lugar hacía menos de cinco años. De esta manera se incumplió con la normativa vigente en clara violación a las secciones antes mencionadas.
En su escrito de Oposición a Solicitud de Revisión, varios de los solicitantes trataron de eludir dicho requisito' arguyendo que la interpretación que debe dársele a la Sección 4.06(6) antes mencionada es a los fines de que ios cinco años para solicitar nuevamente un cambio de zonificación se computan desde la fecha de radicación de la solicitud anterior. Además, sostienen que el cambio de zonificación solicitado en esta ocasión es para un- distrito diferente. Contrario a lo alegado por los recurrentes, la reglamentación vigente apunta a que el período de cinco años comienza a transcurrir a partir de la decisión denegatoria emitida por la agencia. Así también, la parte opositora trató de eludir dicho requisito al indicar que el tipo de uso, o distrito solicitado actualmente era diferente al anteriormente denegado. No obstante, la ley es clara cuando indica que independientemente del distrito solicitado previamente, no se podrá considerar una nueva solicitud dentro de dicho período de cinco años. 
XI
Por los fundamentos antes expuestos, se modifica la resolución C-2-A-57 de la Junta de Planificación y se deja sin efecto las enmiendas a la Hoja 8-B del Mapa de Calificación del Municipio de San Juan aprobadas en los casos de rezonificación números 2003-17-0148-JPZ, 2003-17-0150-JPZ, 2003-17-0177-JPZ, 2003-17-0178-JPZ, 2003-17-0180, 2003-17-0181-JPZ, 2003-17-0182-JPZ, 2003-17-0200-JPZ, 2003-17-0201-JPZ, 2003-17-0210-JPZ, 2003-17-0211-JPZ y 2004-17-0206-JPZ, y así modificada, se confirma. En consecuencia, se reinstala la zonificación de Distrito R-3 previamente existente en los solares objeto de los referidos casos.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 19
1. Plan de Usos de Terrenos de la Región Metropolitana de San Juan del 31 de marzo de 1982, página 69.
2. Plan de Usos de Terrenos de la Región Metropolitana de San Juan del 31 de marzo de 1982, página 72.

3. Id.

4. Id.
5. Véase página 14 del Apéndice del Escrito de Réplica a Solicitud de Revisión Sobre Rezonificación De Calle Aldebarán.
6. Véase página 283 del Apéndice del Recurso.
*787 7. Id.
8. El Reglamento de Ordenación Territorial del Municipio de San Juan de 13 de marzo de 2003 define “calle marginal” como una “vía contigua y paralela a una vía de mayor jerarquía que separa el transito directo del local y proporciona un acceso peatonal y vehicular a las propiedades colindantes”. Apéndice Uno Definiciones Inciso 72, página 8.
9. Véase, Apéndice de los recurrentes, páginas 546-547.
10. Véase Apéndice a la página 283.
11. Véase Apéndice a la página 277.
12. Anejo I y II del Apéndice de la Oposición a Solicitud de Revisión.
13. Páginas 175-184 del Apéndice del Recurso, Anejo III de la Oposición a la Solicitud de Revisión, páginas 215-224, 236-245 del Apéndice del Recurso, Anejo IV y V de la Oposición a la Solicitud de Revisión, páginas 367-375, 357-366, 338-347 del Apéndice del Recurso.
14. En su último señalamiento de error, la Asociación de Residentes indica que los peticionarios sometieron información no veraz e incompleta ante la Junta de Planificación. En vista de la determinación a la que hemos llegado, se hace imposible que' éstos evadan las obligaciones impuestas por los reglamentos aplicables, lo que hace inmeritorio entrar a discutir la conducta señalada.